RUSSELL & Co., SUCRS., S. EN C., peticionaria y apelante, *v.* MANUEL V. DOMENECH, en su carácter de Tesorero de Puerto Rico, demandado y apelado.

No. 6744.—*Sometido:* Noviembre 20, 1934. *Resuelto:* Febrero 8, 1935.

*R. Castro Fernández* y *José López Baralt*, abogados de la apelante; *Hon. Procurador General Benjamín J. Horton* y *R. Cordovés Arana, Subprocurador*, abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Russell & Co. Sucrs., S. en C., una sociedad con residencia en Ensenada, P. R., organizada de acuerdo con· las leyes de esta Isla, solicitó, el 20 de enero de 1934, de la Corte de Distrito de San Juan que expidiera un auto de *injunction* dirigido contra el Tesorero de Puerto Rico ordenándole abstenerse de cobrar ciertas cuotas de riego impuestas sobre fincas de la peticionaria mediante embargo sumario u otro procedimiento que no sea el pleito ordinario en cobro de

contribuciones, cuotas o impuestos y de vender en pública subasta dichas fincas. Solicitó además la expedición de un *injunction* preliminar y pidió que el Tesorero fuera puesto inmediatamente en entredicho.

El propio día 20 de enero la corte decretó el entredicho y ordenó al Tesorero que compareciera a mostrar causa por virtud de la cual no debería expedirse el *injunction* preliminar solicitado. Compareció en efecto el Tesorero y pidió por las razones que expuso que la solicitud de la peticionaria fuera desestimada y anulada la orden de entredicho. Oyó la corte a ambas partes y decidió el caso en contra de la peticionaria. Esta pidió la reconsideración, declarándose sin lugar su petición el 16 de julio último, apelando entonces para ante este tribunal.

Los hechos en que la solicitud se basa son, en resumen, que la peticionaria es dueña de cinco predios de terreno situados en el término municipal de Juana Díaz que el Tesorero de Puerto Rico tasó de acuerdo con la Ley No. 49 de 8 de julio de 1921 (pág. 367), imponiendo a cada uno por los años económicos 1930–31, 1931–32, 1932–33 y primer semestre del 1934 una determinada cuota de riego, y que el 12 de enero, 1934, el Tesorero, por conducto de su agente el Colector de Rentas Internas de Juana Díaz, embargó los cinco predios para el cobro de las siguientes sumas:

| Predio | Contribución | Recargos | Costas | Total |
|--------|-------------:|---------:|-------:|------:|
| 295 | $1,583.99 | $186.62 | $2.50 | $1,778.11 |
| 309 | 4,081.55 | 326.71 | 2.50 | 4,410.76 |
| 413 | 1,623.29 | 190.67 | 2.50 | 1,816.46 |
| 379 | 2,701.72 | 317.31 | 2 50 | 3,021 53 |
| 403 | 8,068.11 | 918.06 | 2 50 | 8,988.67 |

Y sigue alegándose en la solicitud que el embargo trabado es ilegal y nulo por las siguientes razones:

"*a.*—Porque la Ley No. 49 de 1921 no autoriza al Tesorero demandado a embargar sumariamente en cobro de las cuotas o impuestos de riego que provee dicha ley.

"*b.*—Porque el Tesorero de Puerto Rico no tiene poder inherente para cobrar mediante el procedimiento de embargo sumario

provisto en los Arts. 335 y 336 del Código Político, cuotas o impuestos de riego.

"*c.*—Porque aunque la Ley No. 49 de 1921 denomina las referidas cuotas o impuestos de riego, 'contribuciones', tales cuotas o impuestos no son contribuciones en el sentido jurídico de la palabra.

"*d.*—Porque la contribución, cuota o impuesto de riego que provee la Ley No. 49 de 1921 es ilegal, anticonstitucional y nula porque menoscaba derechos contractuales de la peticionaria y delega poderes legislativos al Comisionado del Interior, según fué resuelto por la Corte de Circuito de Boston al pasar sobre la constitucionalidad de la referida Ley No. 49 de 1921 en el caso de People of Porto Rico vs. Havemeyer et al., 60 Fed. (2d) 10, donde el Pueblo de Puerto Rico trató de cobrar a esta peticionaria las cuotas o impuestos de riego sobre las fincas descritas en esta petición por los años económicos 1922–23 al 1929–30 inclusive.

"7.—Que las fincas embargadas son muy necesarias e indispensables en el negocio de la peticionaria, cada una de ellas tiene un valor mucho mayor al total de las cuotas o impuestos de riego que el Tesorero demandado intenta cobrar mediante el alegado ilegal embargo y la venta de las mismas en pública subasta causará graves e irreparables daños y perjuicios a la peticionaria.

"8.—Que la peticionaria carece de un remedio adecuado en ley y si esta Hon. Corte no impide mediante *injunction* el cobro por la vía sumaria de las referidas cuotas o impuestos de riego y permite que el Tesorero demandado venda en pública subasta las fincas embargadas como lo ha amenazado hacer y hará si esta Hon. Corte no lo impide, se privará a la peticionaria de su propiedad sin el debido procedimiento.

"9.—Que aun suponiendo que la Ley No. 49 de 1921 fuese constitucional y válida, a falta de autorización expresa en dicha ley para el cobro de las referidas cuotas o impuestos de riego, el Tesorero demandado no puede cobrarlas nada más que en un pleito ordinario."

En su alegato la parte apelante atribuye a la corte sentenciadora la comisión de seis errores, y dice:

"Antes de empezar a discutir los errores señalados queremos hacer constar que estamos conformes con la conclusión a que ha llegado la Corte Inferior en su opinión, a saber:

"Que no se puede impedir mediante injunction el cobro de una contribución aunque la misma sea ilegal, si existe un remedio en

ley claro, adecuado y eficaz, Matthews vs. Rodgers, 76 U.S. L. Ed. 347, citado en la opinión (Record P. 15) pero sostenemos que no estamos tratando de impedir mediante el injunction solicitado, el cobro de una contribución sino de impedir que el Tesorero de Puerto Rico siga el procedimiento de embargo sumario en cobro de cuotas o impuestos de riego, por dos razones:

"1.—Porque dichas cuotas o impuestos de riego, no son contribuciones, y

"2.—Porque el Tesorero de Puerto Rico no está autorizado por la ley a cobrar, mediante el procedimiento sumario de embargo, las referidas cuotas o impuestos de riego."

Lo expuesto simplifica el estudio y resolución del recurso, pero antes de proceder a ello, parece conveniente referirnos al caso de *People of Porto Rico* v. *Havemeyer et al.,* 60 Fed. (2d) 10 que, como sabemos, se invoca como uno de los fundamentos de la solicitud.

Dicho caso se inició en la Corte de Distrito de San Juan y los miembros que companían la sociedad demandada Russell & Co., Sucrs. S. en C., aquí peticionaria, a saber: Horace Havemeyer, Frank A. Dillingham, Edward S. Paine, Edwin L. Arnold, Frank M. Welty y H. B. Orde, obtuvieron que fuese trasladado a la Corte Federal sobre la base de diversidad de ciudadanía. El Pueblo insistió en la Corte Federal en que el caso fuera devuelto a la Insular. La Corte Federal se negó y al resolver el pleito por sus méritos lo hizo en contra de El Pueblo de Puerto Rico, apelando éste para ante la Corte de Circuito de Apelaciones del Primer Circuito que confirmó la sentencia recurrida. El resumen de la opinión emitida al efecto por la Corte de Circuito es como sigue:

"La jurisdicción de las cortes federales sobre litigios incoados contra sociedades es determinada por la ciudadanía de los socios que las constituyan, aunque sea una entidad que bajo la ley de su domicilio pueda ser demandada como tal sociedad.

"*Se resolvió* que una ley que fija una contribución especial sobre terrenos que reciben aguas de un sistema público de riego, es nula por menoscabar la obligación del contrato sobre entrega de agua equivalente al valor de los derechos de agua que anteriormente tenía el dueño. (Ley Orgánica de Puerto Rico, sección 2; 48 USCA,

sección 737; Ley del Riego Público de Puerto Rico de 1908, según fué enmendada; Ley 49 de 1921, de Puerto Rico, sección 1.)

"Una ley que provee que el Tesorero de Puerto Rico tomará un estimado hecho por el Comisionado del Interior para determinar el tipo de la contribución especial sobre terrenos que reciben agua del servicio público de riego fué declarada nula por delegar poderes legislativos a dicho Comisionado. (Ley 49 de 1921, de Puerto Rico, secciones 1 y 2; Ley del Riego Público de Puerto Rico, 1908, según ha sido enmendada)." 60 F. (2d) 10.

No conforme el Pueblo, acudió a la Corte Suprema de los Estados Unidos y obtuvo un auto de *certiorari*, dentro del cual dicha corte el 13 de marzo de 1933 revocó la sentencia que contra él se había dictado y ordenó que el caso fuera devuelto a la Corte Federal para que fuera trasladado a la Insular.

El resumen de la decisión de la Corte Suprema es como sigue:

"Una sociedad en comandita de acuerdo con las leyes de Puerto Rico no es un *limited partnership* tal cual estas sociedades son conocidas en el derecho común, sino una entidad jurídica con personalidad similar a la de una corporación. P. 478.

"Una demanda iniciada contra una sociedad en comandita de Puerto Rico no puede ser trasladada por los miembros que la constituyen de la corte insular a la de Distrito de los Estados Unidos para Puerto Rico según los artículos 41 y 42 de la Carta Orgánica, fundándose en que dichos socios no son ciudadanos de Puerto Rico ni están domiciliados en la isla. P. 482.

"Un pleito iniciado por El Pueblo de Puerto Rico en cobro de contribuciones insulares no debe calificarse como un pleito que surge bajo las leyes de los Estados Unidos, dentro del significado de los estatutos jurisdiccionales sobre traslado de causas, *a,* porque la autoridad para instituirlos emana de una ley del Congreso, o *b,* porque el demandante ha sido reconocido como una entidad política por la ley del Congreso bajo la cual su gobierno ha sido constituído. PP. 482, 484.

"La doctrina de que un pleito iniciado por una corporación organizada bajo una ley del Congreso cae dentro de la jurisdicción de las cortes federales como uno que surge bajo las leyes de los Estados Unidos, ha sido limitada por los precedentes y por las leyes

del Congreso, y no debe ser ampliada.  P. 485.  60 F. (2d) 10, re-
vocado.''  Puerto Rico v. Russell & Co., 288 U. S. 476.

Como puede verse, la decisión de la Corte Suprema sólo
comprende la de la cuestión de traslado envuelto en el litigio.
Como era fundamental y previa, hizo que cayera como cayó
por su base todo el edificio levantado por las Cortes de Dis-
trito y de Circuito Federales sobre los méritos del caso que-
dando sin fuerza decisiva sus pronunciamientos en cuanto
a la anticonstitucionalidad de la Ley No. 49 de 1921 que es
la aplicada por el Tesorero para el cobro de las cuotas o con-
tribuciones de que aquí se trata, conservando sólo la fuerza
persuasiva que puedan llevar consigo sus razonamientos.

■ Aclarado este punto, procederemos al estudio y reso-
lución de la verdadera cuestión envuelta en el recurso, a
saber: ¿Procede el *injunction* solicitado?

Todo depende de si las sumas cobradas por el Tesorero
son o pueden considerarse como verdaderas contribuciones
porque si lo son o pueden considerarse como tales entonces
la ley sobre pago de contribuciones bajo protesta propor-
ciona a la peticionaria el verdadero procedimiento a seguir
para reclamar los derechos que alega que le asisten y el *in-
junction* que interpuso debió ser como fué desestimado.

Resolviendo la cuestión dice la corte de distrito en la opi-
nión que emitiera para fundar su fallo:

''Frente a las pretensiones de la demandante, nos encontramos
con el Artículo 678 del Código de Enjuiciamiento Civil (Ed. 1933)
que en lo pertinente dice así:

'' 'Art. 678.—No podrá otorgarse un Injunction:

'' '1.—

'' '2.—

'' '3.—

'' '4.—

'' '5.—

'' '6.—

'' '7.—Para impedir la imposición o cobro de cualquier contri-
bución establecida por las leyes de los Estados Unidos o de Puerto
Rico.'

"La cuestión a determinar en este caso es si no obstante el precepto terminante del artículo 678 supra, puede la corte dictar el auto de injunction solicitado en este caso.

"La jurisprudencia es uniforme y está toda conteste en el sentido de que las cortes no ven con simpatía la expedición de autos de Injunction para impedir el cobro de las contribuciones impuestas por el Estado. La regla se impone ante el peligro en que estaría el Estado de no poder cumplir sus obligaciones como tal si la liberalidad en la concesión de este recurso le impidiese cobrar sus contribuciones. Para que se expida el Injunction es necesario que el derecho del peticionario sea sumamente claro. La regla establecida generalmente es, que no obstante la ilegalidad o anticonstitucionalidad de la ley imponiendo la contribución, los tribunales no intervendrán mediante el recurso de Injunction para impedir el cobro de las mismas siempre que el contribuyente tenga un recurso adecuado en ley, y a menos que existan especiales circunstancias demostrativas de que el caso del demandante cae bajo algunas de las reconocidas causas de equidad, tales como daños irreparables, multiplicidad de procedimientos, etc.

"Tratando de esta cuestión la Corte Suprema de los Estados Unidos ha dicho lo siguiente:

" 'Siempre que esta cuestión se ha presentado, este Tribunal invariablemente ha resuelto que la mera ilegalidad o inconstitucionalidad de una contribución del Estado o municipal no es en sí motivo para obtener un remedio en equidad en las cortes de los Estados Unidos. Si el remedio en ley es claro, adecuado y eficaz, el perjudicado debe recurrir al remedio que le proporcionan las cortes del Estado, de las cuales puede trasladar la causa a esta corte para ser revisada, siempre que estuviera envuelta una cuestión federal, Código Judicial Sección 237 U.S.C. título 28, sección 34. Se citan varios casos.' Matthews v. Rodgers, 76 U.S. L. ed. 447, 452.

"En el caso de Long v. Norman, el Juez Bingham hablando por la Corte de Circuito de Apelaciones, Primer Circuito, dijo lo siguiente:

" 'El cobro de contribuciones bajo la autoridad del Estado no puede ser impedido por una corte de los Estados Unidos por la sola razón de que la contribución sea ilegal. Debe aparecer de la faz de la demanda que el perjudicado por la contribución no tiene un remedio adecuado en el curso ordinario de la ley y que existen además circunstancias especiales que colocan el caso bajo algunas de las reglas de equidad.' Long v. Norman et al., 289 F. 5.

"En el caso de Long v. Norman, el Juez Bingham analiza la ley de Massachusetts sobre pago bajo protesta sustancialmente igual a la nuestra, y declara 'que el remedio es adecuado.

"Se ha resuelto que una ley que permita al contribuyente recobrar la cantidad que ha pagado bajo protesta por una contribución ilegal, ofrece un remedio adecuado en el curso ordinario de la ley. Véase Long v. Norman supra; 61 C. J. 1085; Camuñas v. New York & P. R. Steamship Co., 260 F. 40.

"Se ha resuelto además, que el hecho de que se venda en pública subasta una finca por falta del pago de contribuciones no causa en sí daño irreparable al contribuyente, aun cuando dicha finca sea necesaria e indispensable para la continuación de su negocio.    32 C. J. 156.

"No se alega en la demanda la existencia de ninguna otra circunstancia especial que coloque el caso dentro de algunas de las causas de equidad, pero sí se alega que la denominada contribución para el cobro de la cual el Tesorero ha embargado y pretende vender la finca descrita, no es una contribución en el sentido jurídico de la palabra, y que por consiguiente el contribuyente no tendrá derecho a recobrarla al pagarla bajo protesta, pues como alega el demandante, no tratándose del pago de una contribución, no podría el perjudicado acogerse al derecho que concede la ley para recobrar el importe de las contribuciones pagadas bajo protesta.

"La contribución que ha dado motivo a este pleito fué creada por la Ley No. 49 de 8 de julio de 1921, que se titula:

" 'Ley para fijar una contribución a determinados terrenos que se proveen de agua del sistema de riego público de la costa sur, a las cuales no se le impuso contribución alguna por la Ley de Riego Público, y para otros fines.'

"La Sección 1ra. de la referida ley, dice así:

" 'Sec. 1ra.—Por la presente se impone una contribución especial adicional a las ya fijadas por la Ley, a todos los predios de terreno, que para fines de riego se proveen de agua del sistema de Riego Público de la costa Sur, que fué construído y funciona de acuerdo con lo dispuesto por la Ley del Riego Público y sus enmiendas, pero que bajo la Ley actual del Riego no contribuyen al pago de los gastos de sostenimiento de dicho Sistema.'

"El último párrafo de la Sección 2 de la Ley a que venimos refiriéndonos, dice:

" 'Esta contribución será impuesta y recaudada por el Tesorero de Puerto Rico, al mismo tiempo que cualquier otra contribución

impuesta por la Ley del Riego Público y el dinero recaudado será ingresado en el Tesoro Insular, acreditándose al fondo especial que se titula:

" ' "Fondo del Riego, para invertirse en la misma forma y para los mismos fines prescritos en la Ley del Riego Público y leyes enmendatorias de la misma".'

"Claramente expresa el legislador en la ley antes citada toda su intención de crear una contribución igual a la que se creó por la Ley del Riego Público. Esta Ley, la No. 49 antes mencionada, no hace nada más que extender la contribución del riego público a otros terrenos sobre los cuales no se impuso dicha contribución. Por eso la denomina contribución especial adicional. Dispone que se imponga y recaude por el Tesorero de Puerto Rico, al mismo tiempo que cualquier otra contribución impuesta por la Ley del Riego Público y que el dinero recaudado, al igual que el que se recauda por la contribución impuesta por la Ley del Riego Público, se acredite al fondo especial que se titula 'Fondo del Riego.' Estas consideraciones nos llevan a la conclusión de que la contribución creada por la Ley No. 49, es de la misma naturaleza que la creada por la Ley del Riego Público y la disposición legislativa de que se imponga y recaude al mismo tiempo que cualquier otra contribución impuesta por la Ley del Riego Público, claramente demuestra que si para recaudar la contribución impuesta por dicha Ley del Riego Público debe el Tesorero embargar sumariamente la propiedad, el mismo procedimiento debe seguir en lo que respecta a la recaudación de esta contribución, pues no podía ocultarse al legislador que si para el cobro de esta contribución había de seguir el Tesorero el procedimiento ordinario, dilatorio por naturaleza, mientras que para el cobro de la otra habría de recurrir al sumario del Código Político, sería de todo punto imposible que una y otra contribución fuesen recaudadas al mismo tiempo.

"No es necesario resolver aquí si la contribución es ilegal o anticonstitucional, porque como antes expresamos, la anticonstitucionalidad o ilegalidad de una contribución no da derecho por sí solo al contribuyente a recurrir al recurso extraordinario de Injunction. Si la Ley es ilegal, si la ley es inconstitucional, páguese la contribución bajo protesta y aléguese la anticonstitucionalidad o ilegalidad de la contribución dentro del remedio que ofrece la ley al contribuyente que paga su contribución bajo protesta."

Y luego al decidir la moción de reconsideración que le presentara la peticionaria, se expresó así:

"Examinada nuestra relación del caso y opinión que sirvió de base a la sentencia de 11 de abril de 1934, no vemos motivo legal alguno que nos justifique en variar nuestro criterio. No tenemos duda alguna de que la contribución adicional creada por la Ley No. 49 de 8 de julio de 1921 es de la misma naturaleza que la contribución establecida en la Ley del Riego Público, según aparece en la Sección 11 de la Ley No. 128 aprobada el 8 de agosto de 1913.

"En la Sección 11 de la Ley No. 128 antes citada, se dice que la contribución creada por la misma se impone como una carga sobre las tierras (no como una responsabilidad personal de sus dueños) en favor de El Pueblo de Puerto Rico y que constituirá una contribución el gravamen de la cual es superior y anterior en derecho a cualquier derecho, reclamación o gravamen de cualquier otra naturaleza, excepto las contribuciones generales de Puerto Rico, y que dicha contribución vencerá y el Tesorero procederá a su cobro y a embargar y vender la tierra para compeler el cobro de la misma, en la misma forma y al mismo tiempo que hasta aquí se ha dispuesto o se disponga para el cobro de cualesquiera otras contribuciones, etc.

"La Ley No. 49 de 1921 creadora de la contribución objeto de este pleito, en su sección 1ra. en lo pertinente dice así:

" 'Sec. 1ra.—Por la presente se impone una contribución especial adicional a las ya fijadas por la Ley, a todos los predios de terreno que para fines de riego se proveen de agua del sistema de riego público de la Costa Sur, etc.'

"Y el último párrafo de la Sección 2 de la misma ley dice así:

" 'Esta contribución será impuesta y recaudada por el Tesorero de Puerto Rico, al mismo tiempo que cualquier otra contribución impuesta por la Ley de Riego Público, y el dinero recaudado será ingresado al fondo especial de depósito que se titula ''Fondo del Riego'' para invertirse en la misma forma y para los mismos fines prescritos en la Ley del Riego Público y leyes enmendatorias de la misma.'

"Claramente se desprende de los párrafos antes transcritos que la intención del Legislador fué crear una contribución de la misma naturaleza que la impuesta por la Ley del Riego Público y si dentro de esta última el Tesorero tiene facultades para embargar tierras y venderlas en la misma forma que lo hace para el cobro de las contribuciones generales, igual derecho debe tener bajo la Ley No. 49 de 1921, pues donde existe la misma razón debe aplicarse el mismo derecho.'

Insiste la apelante en que dentro del concepto esencial de lo que es una verdadera contribución, no es posible incluir las cuotas de riego que se le cobran y quizá tenga razón, pero a nuestro juicio habiendo en consideración todas las circunstancias que concurren, los hechos y la ley, dichas cuotas pueden considerarse como verdaderas contribuciones que pueden y deben ser pagadas bajo protesta si se quiere obtener su devolución por mandato judicial.

Una de las citas de la propia parte recurrente abarca a nuestro juicio la totalidad del problema.

Transcribimos de su alegato, alterando sólo las itálicas:

"El Juez Cooley cita la siguiente opinión de la Corte Suprema de Mississippi (Macon v. Patty, 57 Miss. 378), en aclaración de la diferencia entre una contribución y una cuota:

" 'Una tributación local solamente puede ser impuesta sobre terrenos; no puede ser, según sucede con una contribución, un pasivo personal del contribuyente; es una tributación sobre la cosa que se supone salir beneficiada. Una contribución es fijada en todo el estado o en determinada subdivisión política conocida, como en un condado o ciudad. Una tributación local es fijada sobre bienes situados en un distrito creado para el fin específico de la tasación y no tiene ningún otro objetivo o móvil que ser la cosa sobre la cual se fija la tributación. Una contribución es una carga continua y debe ser cobrada durante todo el tiempo a intervalos cortos y sin la misma los gobiernos no pueden existir. Una tributación local es una excepción tanto en lo que a tiempo como a localidad se refiere, su existencia surge para determinada ocasión y para realizar determinado fin, y se extingue al cesar la ocasión y realizarse el fin. Una contribución es impuesta, cobrada y administrada por una agencia pública elegida por la comunidad a que se le impone y a ella le es responsable. Una tributación local es impuesta por una autoridad ab extra. *Sin embargo, se asemeja a una contribución en que es impuesta por una autoridad que emana de la Legislatura y en que contribuye al bienestar público, y su pago puede ser exigido por el procedimiento sumario para el cobro de contribuciones. Se asemeja a una contribución en que debe ser impuesta para un fin público y en que debe ser distribuída de acuerdo con alguna regla razonable entre aquellas personas sobre cuyas propiedades se fija.* Se diferencia de una contribución en que el producto de la tasación debe ser gastado en una

mejora que, como excepción clara, sea de una manera definida recibida por la propiedad sobre que se impone.' Citado en Willoughby Treatise on the Constitution, Vol. 2, página 1887.''

Y la verdad es que la recurrente no puede llamarse a engaño porque ella misma como contribuciones consideró las cuotas anteriores de igual naturaleza que se le cobraron en el caso del *Pueblo* v. *Havemeyer et al.,* supra, y como tales fueron tratadas por las Cortes Federales, de Distrito y de Circuito, que decidieron el asunto en su fondo.

Consideramos infundado el temor que alega que tuvo o pudo tener la recurrente de que si acudía al pago bajo protesta El Pueblo le opondría la excepción de que no era aplicable la ley especial sobre la materia, ya que el Pueblo hubiera estado impedido en todo caso de hacerlo así por haber él mismo denominado contribuciones las cuotas y haberlas impuesto y cobrado como tales contribuciones.

*Debe confirmarse la sentencia recurrida.*