LOS DIABLOS DE LA PLAZA, INC., demandante y apelada, *v.* R. SANCHO BONET, en su carácter de TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 7561.—*Sometido:* Mayo 3, 1938. *Resuelto:* Abril 24, 1939.

*Hon. Procurador General B. Fernández García (R. Cordovés Arana,* en el alegato) y *M. Rodríguez Ramos, Procurador General Auxiliar,* abogados del apelante; *Diego Guerrero Noble,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Los Diablos de la Plaza, una corporación organizada de acuerdo con las leyes de la isla, dedicada al negocio de calzado, presentó en la Corte de Distrito de San Juan una solicitud para que se expidiera un auto de *injunction* dirigido contra R. Sancho Bonet, Tesorero de Puerto Rico, ordenándole que se abstuviera de proceder a la tasación y cobro de ciertas contribuciones y se declarara finalmente:

1, que la base para determinar el ingreso neto y contribución sobre ingresos de que partió el Tesorero es ilegal, errónea y arbitraria, siendo en su consecuencia nulas las contribuciones que le impuso, y

2, que el procedimiento de *jeopardy* seguido y las penalidades impuestas son también erróneas e ilegales, debiendo en su consecuencia dejarse sin efecto las notificaciones hechas a la demandante en enero 25, 1937, y el embargo trabado sobre sus bienes en abril 10, 1937.

La corte expidió acto seguido una orden de entredicho y señaló día para que el demandado compareciera y alegara por qué no debería librarse el auto solicitado.

Compareció en efecto el demandado y pidió que se desestimara la solicitud por falta de jurisdicción de la corte para conocer de la misma por razón de la materia, porque la petición carecía de equidad y porque no alegaba hechos suficientes determinantes de una causa de acción. La corte declaró no haber lugar a la desestimación y ordenó la expedición del auto preliminar.

No conforme el demandado, apeló, señalando en su alegato la comisión de seis errores que analizaremos una vez que hayamos resumido los hechos en que la petición se basa.

Ejercítanse en ella dos causas de acción. Para fundar la primera se alega que para el año contributivo de 1935 la demandante a los efectos del pago de la contribución sobre ingresos rindió su declaración consignando una pérdida neta de $2,016.16; que en enero de 1937 el demandado le notificó haber llevado a cabo una investigación en sus libros de contabilidad a virtud de la cual le cobraba por contribuciones, penalidades e intereses $1,153.54; que la tasación del Tesorero se llevó a cabo en uso del poder discrecional que establece la sección 57(d) de la Ley Núm. 74, de 1925 (pág. 401), privando a la demandante de la notificación de deficiencias que prescribe dicha ley por su sección 57, así como del remedio que le confiere; que el demandado aumentó en diez mil dólares el ingreso bruto declarado, basándose en una supuesta omisión de ventas hechas y no declaradas por la demandante, sin descontar el costo de la mercancía "que no constituye ingreso bruto ni neto a tenor de lo que dispone la ley y el reglamento en su artículo 73"; que el procedimiento discrecional (*jeopardy assessment*) seguido es erróneo e ilegal por haberse computado la contribución sobre "ingresos de capital y no sobre beneficios o ingresos", no habiéndose observado lo dispuesto en la ley especialmente en su sección 28; que aun en el supuesto de que las ventas montantes a dichos diez mil dólares hubieran sido efectuadas y no contabilizadas, la pérdida neta reportada no sufriría alteración hasta no demostrarse qué montante de las ventas omitidas representa el

costo de la mercancía; que en el año de que se trata el ingreso bruto procedente de las ventas fué $9,717.97, equivalente a un veinte y dos por ciento del total, por ciento que representa el promedio básico de beneficios en negocios de la misma naturaleza; que si el demandado "hubiera determinado la cuantía de ingresos o pérdidas correspondiente al volumen de diez mil dólares estimados como ventas no contabilizadas, de conformidad con las secciones 28 y 15 de la ley y 73 del reglamento, y hecho uso del por ciento básico de beneficios de negocios de esta naturaleza, la demandante no hubiese estado obligada a pagar contribución, penalidad e intereses por dicho año 1935"; que el demandado agregó a la contribución una penalidad por fraude de $311.49 y otra por negligencia de $155.74, sin darle en cuanto a la segunda la oportunidad que le otorgan el apartado 6, sección 70 y el artículo 240 del Reglamento Núm. 1 para la aplicación de la Ley Núm. 74, enmendada; que en cuanto a la penalidad por fraude el demandado, contrario a lo dispuesto en el artículo 327, no lo notificó de la investigación; que con la imposición el demandado privó a la demandante del beneficio que le concede la sección 57, apartado (g) para liquidar cualquier contribución de ingresos en un término no mayor de diez y ocho meses; que al privarle de los remedios indicados el demandado la coloca en la obligación de prestar una fianza de $2,307.08 en plazo de diez días, requisito que no pudo cumplir por falta de recursos, y que la actuación del demandado le ha creado dificultades extraordinarias, eliminando su crédito bancario y entorpeciendo la marcha de sus negocios.

La segunda causa de acción se funda en alegaciones semejantes aplicadas al cobro de la contribución con imposición de penalidades, correspondiente al siguiente año contributivo o sea el 1936.

Seis errores, como ya indicamos, señala el apelante en su alegato. Sostiene por el primero, que no puede decretarse un *injunction* para impedir la imposición o el cobro de una contribución fijada por las leyes de Puerto Rico; por el se-

gundo que la peticionaria tenía un remedio adecuado en el curso ordinario de la ley; por el tercero y el cuarto que su petición no aduce hechos suficientes a virtud de los cuales surja su derecho al remedio en equidad que solicita, ni tampoco causa de acción alguna contra el demandado, y por el quinto y el sexto que la corte sentenciadora erró al declarar sin lugar su moción de desestimación y al decretar el *injunction*.

En efecto la ley sobre *injunction* de esta jurisdicción prescribe por su sección 4, párrafo 7, que no podrá decretarse un *injunction* para impedir la imposición o el cobro de cualquier contribución establecida por las leyes de los Estados Unidos o de Puerto Rico—Artículo 678, inciso 7, del Código de Enjuiciamiento Civil, ed. 1933—y la jurisprudencia tal como ha sido explicada, fijada y aplicada por la propia Corte Suprema nacional es como sigue:

"Supongamos que las demandas para recobrar las contribuciones radicadas en estos casos estuvieron bien fundadas; que el método adoptado por la junta de revisión e igualamiento para determinar el valor de la franquicia y el capital (*capital stock*) no es el mejor método; que el mismo produce resultados faltos de uniformidad e injustos en algunos casos; que lo mismo sucede con el método usado por las municipalidades para determinar la base de tasación a los efectos contributivos; que la junta de revisión e igualamiento aumentó la tasación total de cada compañía sin tener para ello evidencia suficiente; en fin, supongamos que en éste y otros muchos aspectos el procedimiento fué defectuoso o ilegal—¿se desprende de ello que en cada uno de esos casos una corte de equidad impediría el cobro de la contribución a través de un *injunction*, o prohibiría el cobro de toda la contribución cuando es obvio que en justicia debería pagarse su mayor parte, y que si no se pagase, que el querellante dejaría de pagar toda la contribución?

"Nos proponemos considerar estas cuestiones por un momento, porque el enorme peso contributivo que exigen las deudas de los Estados Unidos, de los diferentes Estados y de los condados, ciudades y pueblos, ha dado como resultado el que se recurra a todos los medios posibles para evadir su fuerza.

"Se ha resuelto repetidas veces que ni la mera ilegalidad de la contribución de que se trate, ni su injusticia o irregularidad, por sí

mismas, dan derecho a que se solicite un *injunction* en una corte de equidad. (Citas.)

"El gobierno de los Estados Unidos ha dispuesto, tanto en lo referente a los derechos de aduana como a las rentas internas, un sistema cabal de justicia correctiva, en cuanto a todas las contribuciones impuestas por el gobierno ordinario, que se fundó en ambas ramas sobre la base de apelaciones dentro de los departamentos ejecutivos. Si la parte agraviada no obtiene satisfacción en esta forma, existen disposiciones para el recobro de la contribución después de haberla pagado, mediante acción contra el oficial colector.

"Para que no pudiera haber un mal entendido en cuanto a la universalidad de este principio, se legisló expresamente, en 1867, que 'no se interpondrá pleito en ninguna corte, cuyo propósito sea impedir la tasación o cobro de cualquier contribución.' Rev. Stat. sec. 3224. Y aun cuando fué la intención hacerlo extensivo sólo a contribuciones impuestas por los Estados Unidos, demuestra la precaución del Congreso ante los riesgos a que habría que temerle si las cortes de justicia pudieran, *en cualquier caso,* intervenir en el procedimiento seguido para el cobro de contribuciones, en el que descansa el gobierno para la continuación de su existencia. Es una política sabia. Se funda en una filosofía sencilla derivada de siglos de experiencia, que hay que hacer efectivo el pago de contribuciones a través de medios sumarios y severos, en contra del sentimiento opuesto a ello y a veces adverso; y para efectuarlo felizmente, otros instrumentos y otros procedimientos se requieren, que los pertenecientes a las cortes de justicia. (Citas.)" *State Railroad Tax Cases,* 92 U. S. 575, 612, 23 L. ed. 663.

La regla tiene sin embargo excepciones, como la misma Corte Suprema ha decidido. Así, en *Miller* v. *Nut Margarine Co.,* 284 U. S. 498, 509, hablando por el Juez Butler, se expresó en los siguientes términos:

"Independientemente de, y en casos surgidos con anterioridad a la aprobación de la disposición (Ley de marzo 2, 1867, 14 Stat. 475) que pasó a ser el R. S. 3224, esta corte, en armonía con la regla que generalmente siguen las cortes de equidad, resolvió que no procede una acción para impedir el cobro de una contribución por el solo fundamento de su ilegalidad. La razón principal es que como las cortes no tienen autoridad para prorratear o igualar las contribuciones ni para efectuar tasaciones, tales pleitos permitirían a aquellos que adeuden contribuciones dilatar un tanto su pago, o posiblemente es-

capar su peso, y en esa forma entorpecer el cobro de contribuciones para el sostenimiento del gobierno. Y en la misma forma, esta corte reconoce la regla que en aquellos casos en que el querellante demuestra que además de la ilegalidad de un cobro en la guisa de una contribución, existen circunstancias especiales o extraordinarias suficientes para traer el caso dentro de alguna de las ramas reconocidas de la jurisprudencia de equidad, puede entablarse pleito para restringir al colector. (Citas.) La sección 3224 establece el principio primeramente enunciado, y debe interpretarse tan en armonía como se pueda, con el mismo, y con las razones en que descansa. (Citas.) La sección no se refiere específicamente a la regla aplicable a casos que envuelvan circunstancias excepcionales. Las palabras generales empleadas no son suficientes, y se necesitaría un lenguaje específico que indubitadamente descubriese tal propósito, para que se justificase la intervención por parte del Congreso en la derogación de una regla tan saludable y tan bien establecida. Esta corte ha dado efecto a la sección 3224 en un número de casos. (Citas.) Nunca ha resuelto que la regla sea absoluta, sino que ha indicado repetidamente que circunstancias extraordinarias y excepcionales rinden sus disposiciones inaplicables. (Citas.)''

La cuestión no es nueva en esta jurisdicción. Véanse *The Texas Co.* v. *Domenech, Tes.,* 50 D.P.R. 432; *Russell & Co.* v. *Domenech, Tes.,* 48 D.P.R. 54, y *Durlach Bros., Inc.,* v. *Domenech, Tes.,* 47 D.P.R. 654.

Siendo ello así, lo que hay que preguntarse y contestar para resolver la apelación debidamente es si existe o no un remedio en el curso ordinario de la ley al alcance de la peticionaria para hacer valer su derecho, si lo tiene, y si existe, determinar si concurren o no en su caso las circunstancias extraordinarias que la jurisprudencia exige para que pueda prescindirse del recurso ordinario e invocarse el inmediato auxilio de la jurisdicción de equidad de las cortes por medio de la expedición de un auto de *injunction.*

Que existe un recurso especialmente establecido en la propia Ley de Contribuciones sobre Ingresos, Ley Núm. 74 de 1925, pág. 401, es perfectamente claro. Véanse las secciones 62 y 76 de dicha ley.

Esclarecido ese extremo, veamos si concurren las circunstancias extraordinarias que la jurisprudencia exige.

Dice a este respecto la peticionaria en su alegato:

"En el caso de epígrafe nosotros entendemos que la imposición de una contribución sobre capital en virtud de una ley privilegiada como lo es nuestra ley de ingresos, presenta por sí solo un caso excepcional o extraordinario para el ejercicio por esta Honorable Corte de su jurisdicción de naturaleza extraordinaria. *Durlach Bros. v. Domenech,* supra. No solamente presenta nuestro caso la nulidad manifiesta de la contribución impuesta, la arbitrariedad del tesorero sino que también las inconveniencias perjudiciales y aplastantes que han motivado la intervención del brazo fuerte de una corte de equidad."

Examinemos las circunstancias concurrentes. En primer lugar en la propia solicitud de *injunction* se reconoce que el procedimiento llamado *jeopardy assessment* que fué el seguido por el Tesorero para la imposición y el cobro de la contribución en este caso está autorizado por la ley. Prescribe en efecto la letra (*d*) de la sección 57 de la dicha Ley Núm. 74:

"(*d*) Si el Tesorero creyere que la tasación o cobro de una deficiencia ha de ser comprometida por la demora, dicha deficiencia será tasada inmediatamente y la notificación y requerimiento para el pago de la misma hechos por el Tesorero. En tal caso podrá hacerse la tasación (1) sin el aviso provisto en la subdivisión (*a*) de esta sección, o (2) antes del vencimiento de los treinta días establecidos en la subdivisión (*a*) de esta sección aunque la notificación se haya hecho, o (3) en cualquier época anterior a la resolución final de la junta sobre la referida deficiencia aunque el contribuyente haya apelado."

Y en segundo lugar la cuestión referente al ingreso sobre capital no surge de la solicitud ni del alegato de la propia parte apelada con perfecta claridad, ni en todo caso reviste un carácter tan extraordinario que justifique la intervención de las cortes a los efectos de paralizar el cobro mediante *injunction.*

Podrá tener razón quizá la peticionaria pero si la tiene, vía franca, amplia y segura le proporciona la ley citada para que le sea reconocida por la propia Administración y en última instancia por las Cortes de Justicia. Si por lo que se alega en la solicitud sobre ese extremo, se estuviera justificado para prescindir del afianzamiento o del pago bajo protesta, difícilmente podría encontrarse un caso en que fuera de aplicación la ley especial sobre la materia decretada por el legislador para servir de norma regular a las reclamaciones sobre imposición y cobro de contribuciones e impuestos.

En cuanto a la imposición y cobro de las penalidades, bastará transcribir lo que dispone la sección 58 de la repetida Ley Núm. 74 de 1925, pág. 519. Es así:

"Sección 58.—(a) Si una parte de cualquier deficiencia fuere debida a negligencia o a ignorancia intencional de las reglas y reglamentos, pero sin la intención de defraudar, se impondrá, cobrará y pagará en la misma forma que si se tratara de una deficiencia, el 5 por ciento del total de la deficiencia (además de ésta) con la excepción de que las subdivisiones (e) y (f) de la sección 57 no serán aplicables.

(b) Si una parte de cualquier deficiencia se debiere a fraude para evadir la contribución, entonces el 50 por ciento del montante total de la deficiencia (además de ésta) será impuesto, cobrado y pagado en vez de la adición del 50 por ciento que dispone la sección 70."

Si el Tesorero hizo buen o mal uso de sus facultades, ello puede dilucidarse en el procedimiento especial de referencia. Según la propia solicitud éste es un caso en que el Tesorero a virtud de una investigación que practicara después de rendida su declaración por parte del contribuyente, concluyó que éste había omitido ventas hechas por valor de diez mil dólares.

Resta, pues, considerar las alegaciones de la solicitud referentes a la imposibilidad en que se encontraba la peticionaria de valerse del procedimiento especial. Ya las resumimos. Copiadas a la letra, dicen:

### Primera causa de acción:

"15. Que al privar a la demandante de los remedios establecidos por la ley y a los cuales se ha hecho mención en los apartados anteriores, el demandado la pone en la obligación de tener que prestar una fianza por la suma de $2,307.08, para lo cual se le ha concedido un plazo improrrogable de diez (10) días a contar del 25 de enero de 1937, o sea desde la fecha de notificación de tasación, requisito éste que ha sido imposible llevar a cabo la demandante por carecer de los recursos necesarios para la aportación (*sic*) de dicha fianza.

"16. Que la actuación del demandado ha puesto a la demandante en dificultades extraordinarias, eliminando su crédito bancario y entorpeciendo la marcha de sus negocios en el curso normal en que los venía llevando a cabo la demandante antes de enterarse sus acreedores del citado procedimiento de cobro incoado por el demandado."

### Segunda causa de acción:

"7. Que al privar a la demandante de los remedios establecidos por la ley y a los cuales se ha hecho mención en los apartados anteriores, el demandado la pone en la obligación de tener que prestar una fianza de $4,795.04, para lo cual se le ha concedido un plazo improrrogable de diez (10) días a contar del 25 de enero de 1937, o sea desde la fecha de notificación de tasación, requisito éste que ha sido imposible de llevar a cabo la demandante por carecer de los recursos necesarios para la prestación de dicha fianza."

### Común a ambas causas:

"(*a*) Que la demandante es una corporación que tiene hoy día como capital pagado la suma de $1,500 y ha venido gozando de un limitado crédito que le facilita desenvolverse económicamente dentro de la estrechez de su capital y negocio y que su situación financiera según balance practicado el día 28 de febrero de 1937, señala como únicos bienes o activo, la cantidad de $16,639.80 de cuya suma está adeudando al banco y a distintos acreedores la cantidad de $11,062.95, resultando una diferencia o activo neto de $5,576.75 y si bien es verdad que puede desarrollar su pequeño negocio dentro de la estrechez económica que indica el balance de referencia, no obstante a la demandante no le es posible, por estar incapacitada económicamente, según se deja expresado, prestar o causar que se preste el total de la fianza exigídale por el demandado en la suma de $7,102.12.

"(*b*) Continúa exponiendo la demandante que no pudiendo prestar la mencionada fianza por la susodicha cantidad de $7,102.12 no

ha podido proteger sus derechos administrativamente según el camino que para ello le señala la sección 62(*a*) y (*b*) de la Ley de Ingresos, supra, ni defenderse contra las actuaciones ilegales y arbitrarias del demandado.

"(*c*) Continúa exponiendo la demandante que con fecha 10 de abril de 1937 el Tesorero para efectuar el cobro de las tasaciones de contribuciones antes mencionadas, embargó bienes muebles a la demandante por valor de $4,020, amenazando vender en pública subasta los embargados bienes muebles si dentro del término improrrogable de diez (10) días la demandante no hubiere satisfecho el montante de las contribuciones tasádasle e impuéstasle por el demandado según anteriormente relacionadas.

"(*d*) Que las actuaciones del demandado estableciendo un ingreso en contraposición a lo que indica la sección 28 de la ley y artículo 73 del reglamento, determinando una cantidad por concepto de contribución que de hecho es ilegal por ser computada sobre sumas que no constituyen ingresos para establecer un procedimiento discrecional de 'jeopardy assessment' y cobro, traerán la ruina del negocio de la demandante causándole daños irreparables y sometiéndole a multiplicidad de procedimientos."

Si bien no dejan de impresionar, no convencen las anteriores alegaciones de la imposibilidad alegada. Para la expedición del *injunction* se exigió una fianza de $3,500. No se alega que no pudiera ser prestada. Es cierto que la de $7,102.12 es mayor, pero no podemos comprender cómo a una corporación como la peticionaria no le hubiera sido dable conseguirla, a menos que careciera por completo de recursos propios y crédito, y ello no surge con la particularidad y certeza debidas de la solicitud.

Para contrastarlas con las de éste, veamos cuáles fueron las circunstancias extraordinarias que concurrieron, por ejemplo, en el caso de la Corte Suprema que citamos a los efectos de fijar la excepción.

El propio Juez Sr. Butler, en la opinión de la corte, las expone como sigue:

"Éste no es un caso en que se solicita el *injunction* sobre la sola base de ilegalidad debido al error en la cuantía de la contribución. El

artículo no está cubierto por la ley. Una contribución válida sobre la oleomargarina no pudo, bajo ninguna posibilidad legal, imponerse al querellado, y por tanto los fundamentos de la sección 3224 son, si aplicables, de muy poca fuerza. (Citas.) El demandado comenzó a hacer negocios después que en repetidas ocasiones el Comisionado había establecido y las cortes resuelto que el producto que se proponía fabricar no era oleomargarina ni tributable bajo la ley, y bajo la palabra del departamento al efecto de que no se le impondría una contribución a su mercancía. Por más de año y medio el demandado vendió su producto ateniéndose a las antedichas decisiones al efecto de que no estaba sujeto a una contribución. Si se le obligase a pagar la contribución su pérdida sería de siete centavos por libra. Antes de la última decisión del comisionado el demandado había fabricado y vendido tal cantidad que la contribución ascendería a una suma superior a la que él podía pagar. El peticionario se allanó a que se expidieran los autos de *injunction* concedidos en Rhode Island y en el Distrito de Columbia y no impuso ninguna contribución sobre productos idénticos que se fabricaban contemporáneamente por los querellantes en tales casos, y ordenó se pusiese en vigor en cuanto a toda la producción del demandado. Tal discriminación está en conflicto con el principio básico de la disposición constitucional que provee que los arbitrios impuestos por el Congreso habrán de ser uniformes a través de todos los Estados Unidos. No requieren mayor elaboración los hechos probados para demostrar que el dar efecto a la ley en contra del demandado sería arbitrario y opresivo, destruiría su negocio, lo arruinaría financieramente e infligiría pérdidas por las cuales la ley no le ofrece ningún remedio. Es claro que por razón de los fundamentos especiales y extraordinarios la sección 3224 no es de aplicación. La corte inferior correctamente resolvió que el demandado tenía derecho a un *injunction*.''

Y aún bajo ellas el Juez Sr. Stone, a quien se unió el Juez Sr. Brandeis, disintió en los siguientes términos:

''En mi opinión el R. S. sección 3224 que lee que 'no se mantendrá en ninguna corte una acción para restringir la tasación o cobro de una contribución', no puede correctamente interpretarse como que admite el caso de autos, el único propósito del cual es impedir el cobro de una contribución. Aprobado en 1867, este estatuto, por más de sesenta años, ha sido aplicado consistentemente como impidiendo un remedio, sin importar la equidad alegada.''

*Debe revocarse la resolución apelada y en su lugar dictarse otra desestimando la solicitud sin especial condenación de costas.*

El Juez Asociado Sr. Wolf disintió.[*]

El Juez Asociado Sr. De Jesús no intervino.