THE TEXAS COMPANY (PUERTO RICO), INC., peticionaria y apelada, *v.* MANUEL V. DOMENECH, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 6851.—*Sometido:* Mayo 27, 1936. *Resuelto:* Julio 24, 1936.

*Hon. Procurador General B. Fernández García (Benjamin J. Horton en el alegato) y R. Cordovés Arana, Procurador General Auxiliar, abogados del apelante; R. Castro Fernández y José López Baralt, abogados de la apelada.*

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

La peticionaria, The Texas Company (Puerto Rico), Inc., corporación que se dedica al negocio de compra y venta e importación y exportación de gasolina, formuló solicitud de *injunction* contra el Tesorero de Puerto Rico, alegando como hechos esenciales los siguientes:

1º.—Que de una investigación practicada por el Tesorero de Puerto Rico, con el fin de determinar las existencias de gasolina de la peticionaria en 24 de julio de 1931, fecha en que entró en vigor la Ley núm. 40 de 1931 (pág. 361), que fija en siete centavos por galón el impuesto sobre gasolina, resultó que por un error no intencional la peticionaria anotó 21,398 galones de gasolina como *exportados,* cuando en realidad habían sido *vendidos* localmente antes de entrar en vigor la nueva ley de 1931 y mientras regía la Ley núm. 12 de 1930 (pág. 159), que imponía seis centavos por galón.

2º.—Que los auditores del Gobierno erróneamente hicieron subir la cantidad a 24,491 galones, razón por la cual el Tesorero impuso y cobró a la peticionaria la suma de $1,469.46 en vez de $1,283.88, a que ascendería la contribución de seis centavos sobre los 21,398 galones erróneamente reportados.

3º.—Que la peticionaria tampoco incluyó en su inventario de julio 24, 1931, la cantidad de 155,827.52 galones que en la indicada fecha se encontraban en alta mar, y que fueron recibidos en San Juan uno o dos días después de haber empezado a regir la Ley núm. 40 de 1931, por cuyo motivo el Tesorero le impuso la contribución de siete centavos por galón, haciendo un total de $10,907.93.

4º.—Que en 25 de enero de 1934, fecha en que terminó la investigación de los auditores, el Tesorero exigió a la peticionaria el pago de las dos partidas de $1,469.46 y de $10,907.93, más $545.39 por recargos al 5% y $3,199.66 por intereses al 1% mensual hasta enero 24, 1934; que en 8 de febrero de 1934, la peticionaria entregó al Tesorero un cheque certificado por

$1,283.88 en pago de la contribución de seis centavos por galón sobre los 21,398 galones no reportados y otro cheque certificado por $10,907.89 en pago de la contribución de siete centavos por galón sobre 155,827 galones; y que en 12 de febrero de 1934 la peticionaria entregó al Tesorero otro cheque certificado por $193.42 para cubrir la contribución sobre la diferencia en el número de galones fijados por una y otra parte, cubriendo .así la totalidad de los impuestos adeudados.

5º.—Que los tres cheques, por un total de $12,385.19 fueron cobrados por el Tesorero, y que por consiguiente la peticionaria no adeuda suma alguna por concepto de contribuciones sobre la gasolina; y que al recibir los referidos cheques, el Tesorero entregó a la peticionaria igual cantidad en sellos de rentas internas, los cuales fueron fijados a las facturas correspondientes, pero el Tesorero se negó a cancelar dichos sellos por no haber la peticionaria pagado el importe de los intereses y penalidades que le reclama el Tesorero demandado.

6º.—Que en febrero 8 de 1934, el Tesorero embargó 162,868 galones de gasolina y además toda la gasolina existente en los tanques de la peticionaria en San Juan, en cobro de las mismas contribuciones ya pagadas, más los recargos, intereses, multa administrativa y costas de embargo, por un total de $16,287.84.

Como segunda causa de acción se alega:

7º.—Que en enero 19, 1934, la peticionaria importó 1,243,705 galones de gasolina, a los que el Tesorero impuso la contribución de siete centavos por galón, la que fué pagada, con excepción de $19,349.88, cantidad que fué retenida por la peticionaria, como compensación por igual suma que el Tesorero debía reintegrar a la peticionaria por concepto de contribuciones pagadas por ésta sobre varias partidas de gasolina que fueron exportadas de Puerto Rico; que el Tesorero se negó a aprobar la compensación, y el 3 de febrero de 1934, sábado, devolvió a la peticionaria sus cheques por $16,647.26; que el 6 de febrero de 1934, que fué el primer día hábil después del tres, por haber estado cerrados los bancos el lunes día cinco, la peticionaria entregó al Tesorero un cheque certificado por $19,349.88, el que fué aceptado y cobrado. Que al recibir dicho cheque, el Tesorero entregó a la peticionaria sellos de rentas internas por el montante del cheque y partió dichos sellos en dos mitades, fijando y cancelando una mitad en las facturas originales y la otra mitad en el libro de facturas de la peti-

cionaria; y que después de cancelar dichos sellos, el Tesorero devolvió a la peticionaria las facturas originales, alegando no podía aceptarlas por no haberse pagado la suma de $967.50 de recargos, más $90.30 de intereses.

8º.—Que a pesar de los pagos hechos por la peticionaria, el día 10 de febrero, 1934, el Tesorero demandado embargó diversas propiedades de la peticionaria en cobro de la suma de $19,349.88, que la peticionaria alega había sido ya pagada, más los recargos, intereses y costas, ascendiendo en total a $20,408.18.

Alega además la peticionaria, que habiéndose negado el Tesorero a recibir las cinco facturas originales, en las que están adheridas una mitad de los sellos cancelados, la peticionaria, depositó dichas facturas en la secretaría de la corte de distrito, a la disposición del demandado.

El Tesorero notificó a la peticionaria que si dentro de los diez días siguientes al de la notificación no hacía efectivas las sumas reclamadas, el demandado procedería a vender en pública subasta las propiedades embargadas.

Como fundamento de derecho, se alega en la solicitud que el embargo trabado por el Tesorero es ilegal y nulo por las siguientes razones:

A.—Porque se trata de cobrar contribuciones ya pagadas en su totalidad.

B.—Porque la Ley núm. 40 de 1931 no autoriza al Tesorero para embargar sumariamente en cobro de contribuciones sobre la gasolina, y menos por recargos, intereses, multas y costas.

C.—Porque ni la Ley núm. 12 de 1930, que enmendó la ley original núm. 52 de 1925 (pág. 297), ni esta última, autorizan al Tesorero a embargar sumariamente. De acuerdo con la Sección 5 de la ley original, el Tesorero sólo puede embargar la gasolina sobre la cual se debe la contribución, lo que no hizo en el presente caso, pues la gasolina que devengó el impuesto fué vendida antes de julio 24, 1931.

D.—Porque la incorporación por referencia que se hace por la Sección 6 de la Ley núm. 52 de 1925 (pág. 297), de las disposiciones de los títulos 1, 3, 4, 7, 8, 9 y 10 de la Ley de Arbitrios (núm. 68) de 28 de julio de 1923 ( (1) pág. 443), según enmendada, y las disposiciones de la Ley núm. 40 de 1931 (pág. 361) que autorizan al Tesorero para cobrar el impuesto

con sujeción a las disposiciones de la Ley de Rentas Internas, son ilegales, nulas e inconstitucionales por estar en abierta contràdicción con el Artículo 34 de la Ley Orgánica de Puerto Rico.

E.—Porque ninguna de las leyes de impuestos sobre la gasolina autoriza. la imposición de recargos, intereses, multas y. penalidades; y porque, aun cuando las disposiciones de la Ley de Arbitrios pudieran ser incorporadas por referencia a las leyes núms. 52 de 1925 y 40 de 1931, la Ley de Arbitrios en vigor en julio, 1931, no autorizaba tales imposiciones, no habiendo sido éstas autorizadas hasta agosto 6 de 1931, fecha en que empezó a regir la Ley de Arbitrios núm. 83 de 1931 (pág. 505), siendo por tal razón ilegales las imposiciones comprendidas en la primera causa de acción.

F.—Porque si se permite al Tesorero demandado vender los bienes embargados, los que tienen un valor mucho mayor del doble del importe de las cantidades reclamadas, el Tesorero cobraría dos veces la contribución por él reclamada, privando a la peticionaria de su propiedad sin el debido proceso de ley.

Se alega por último, que la propiedad embargada es necesaria a la peticionaria para la continuación de sus negocios y el cumplimiento de sus contratos con otras personas; que la venta en subasta pública traería como consecuencia multiplicidad de pleitos contra la peticionaria, la que sufriría daños irreparables; que la peticionaria carece de remedio legal adecuado y rápido para impedir la realización de los actos que el demandado amenaza realizar; que la Ley núm. 8 de 1927 (pág. 123), sobre pago de contribuciones bajo, protesta, es aplicable solamente al contribuyente que creyere que *no debe pagar* una contribución, pero no al que *la paga,* y que dicha ley no obliga a pagar bajo protesta *por segunda vez* la contribución impuesta al contribuyente; que dicha ley no dispone el pago bajo protesta de los recargos, intereses y penalidades y que si la peticionaria los pagara no podría recobrarlos por el procedimiento de la mencionada ley, ni por ningún otro procedimiento; y que aun cuando el Tesorero tuviera derecho a cobrar las cantidades que reclama, sólo podría hacerlo mediante un pleito ordinario.

Solicitó la peticionaria la expedición de un auto de *injunction* definitivo por el que se ordene al Tesorero que se abstenga de cobrar las cantidades envueltas en este litigio y de vender en pública subasta los bienes embargados, y que durante la tramitación del pleito se expida un *injunction* preliminar a los mismos efectos.

Expedida la orden para mostrar causa por la cual no deba concederse el *injunction* solicitado, la corte de distrito, después de oír al demandado en oposición a la solicitud, decretó el *injunction* preliminar mediante prestación de fianza por dos mil dólares. Es contra esa resolución que el demandado ha interpuesto el presente recurso.

El señalamiento de errores formulado por el apelante en su alegato ante esta Corte Suprema, especifica nueve errores que se dice fueron cometidos por la corte inferior al dictar la orden de *injunction* contra el Tesorero de Puerto Rico. Dichos nueve alegados errores pueden condensarse así:

1°.—La Corte de Distrito erró al resolver que el Tesorero carecía de autoridad para imponer y cobrar intereses, recargos, penalidades, multas administrativas y costas y menos aún para proceder al cobro de los mismos mediante el procedimiento administrativo sumario de embargo y venta en pública subasta de la propiedad embargada.

2°.—La Corte de Distrito erró al asumir jurisdicción y al decretar la expedición del auto de *injunction*.

3°.—La Corte inferior erró al resolver que la peticionaria tenía derecho a que se le compensara la suma de $19,349.88 que El Pueblo de Puerto Rico le adeudaba por concepto de impuestos cobrados sobre gasolina que había sido exportada.

Discutiremos los tres indicados errores en el mismo orden en que los hemos expuesto:

■ La controversia entre las partes no se refiere en modo alguno a la legalidad o ilegalidad de los cobros hechos por el Tesorero a la peticionaria, por concepto de contribuciones sobre la gasolina importada o vendida en Puerto Rico. De los autos aparece que la peticionaria ha pagado o ha ofrecido pagar al Tesorero todas las cantidades exigidas por dicho

funcionario, como contribuciones sobre diversas partidas de gasolina, pero que se negó a pagar las sumas reclamadas por el Tesorero por concepto de recargos, intereses, multas administrativas y costas impuestos como penalidades por no haber efectuado a su debido tiempo el pago de las contribuciones, alegando que el Tesorero no está facultado por ley alguna para exigir tales pagos ni imponer tales penalidades.

Conviene para la resolución del problema jurídico que se nos plantea, que hagamos una breve exposición del movimiento de nuestra legislación sobre impuestos a la gasolina. Originalmente, el impuesto a la gasolina se hizo figurar entre las disposiciones de la Ley de Arbitrios. La Ley núm. 68 de julio 28, 1923, titulada ''Ley de Arbitrios de Puerto Rico'', Leyes de 1923, pág. 443, disponía:

''Sección 20.—Se impondrá, cobrará y pagará como impuesto de rentas internas por una sola vez sobre cada uno de los artículos siguientes:

''.    .    .    .    .    .    .    .    .

''37.—*Gasolina.*—Sobre toda gasolina, que se fabrique, produzca, venda o consuma en Puerto Rico, un impuesto a razón de medio ($\frac{1}{2}$) centavo por galón.''

La única cláusula penal que aparece en dicha ley es la Sección 38 de la misma que dispone que la persona que faltare al pago de los impuestos incurrirá en *misdemeanor,* pudiendo *la mercancía sobre la que se dejare de pagar el impuesto* ser embargada y vendida en pública subasta para indemnizar al Gobierno por las cantidades defraudadas. La Sección 88 de la misma ley autoriza al Tesorero para imponer y cobrar por procedimientos administrativos una multa que no exceda de $25 por cada infracción, disponiendo que si no se efectuare el pago de la multa el Tesorero podrá incoar procedimientos ante la corte correspondiente, por infracción de la ley. No hemos encontrado disposición alguna en dicha ley que autorice al Tesorero a imponer y cobrar recargos, intereses o costas, ni para cobrar éstos o las multas mediante embargo y venta de propiedades.

En 21 de julio de 1925, la Legislatura aprobó la Ley núm. 52 (Leyes de 1925, pág 297) por la que se derogó el inciso 37 de la Ley de Arbitrios de 1923, supra, y se autorizó la imposición y cobro de un impuesto de dos centavos por galón de gasolina que se consuma o venda en Puerto Rico, y la creación de un fondo para el asfaltado de las carreteras. La sección 5 de dicha ley declara culpable de *misdemeanor* a toda persona que faltare al pago del impuesto y autoriza al Tesorero a *embargar y vender en subasta pública toda gasolina sobre la que no se hubiere pagado el impuesto,* para responder de las cantidades defraudadas al Tesoro.

La Ley núm. 8 de mayo 11 de 1927 (leyes de 1927, pag. 421), enmendó la sección 1 de la Ley núm. 52 de 1925, para subir el impuesto a cuatro centavos por galón; y la Ley núm. 12 de abril 21, 1930 (leyes de 1930, pág. 159) enmendó de nuevo dicha sección, la que quedó redactada así:

"Sección 1.—Se impondrá, cobrará y pagará como impuesto de Rentas Internas por una sola vez la suma de seis (6) centavos por cada galón de gasolina que se venda o consuma en Puerto Rico; *Disponiéndose,* que este impuesto tendrá el carácter de renta interna, y debe, por lo tanto, ser uniforme y general, tanto para el artículo que se produzca en el exterior y se traiga a Puerto Rico, como para el que se fabrique o se produzca en esta Isla, y tal impuesto será cobrado por el Tesorero de Puerto Rico mediante fijación y cancelación de sellos de rentas internas en los documentos que con ese objcto prescribiere."

Esta última enmienda empezó a regir el 1º. de julio de 1930.

En abril 24, 1931, se aprobó la Ley núm. 40 (leyes de 1931, pág. 361) por la que se deroga la núm. 12 de 1930 y se dispone:

"Sección 1.—Por la presente Ley se impondrá, cobrará y pagará como impuesto de Rentas Internas por una sola vez la suma de siete (7) centavos por cada galón de gasolina que se introduzca, fabrique, venda o consuma, o que de otro modo se disponga para el consumo en Puerto Rico; y tal impuesto será cobrado por el Tesorero de Puerto Rico mediante fijación y cancelación de sellos de Rentas

Internas, que con ese objeto prescribiere; *Disponiéndose,* que los empleados federales de Aduanas podrán cooperar con el Tesorero de Puerto Rico para el cobro de dicha contribución; *y disponiéndose, además,* que este impuesto tendrá el carácter de renta interna y debe, por lo tanto, ser uniforme y general tanto para el artículo que se produzca en el exterior y se traiga a Puerto Rico, como para el que se fabrique o se produzca en esta Isla, y tal impuesto será cobrado por el Tesorero de Puerto Rico, con sujeción a las disposiciones de la Ley de Rentas Internas, tan pronto como la gasolina sea fabricada, producida o introducida en Puerto Rico, mediante la fijación y cancelación de sellos de Rentas Internas en los documentos que al efecto prescribiere el Tesorero.''

Esta ley, de acuerdo con el Reglamento de Tesorería, empezó a regir el día 24 de julio de 1931.

En ninguna de las leyes que hemos citado, aparece disposición legal alguna que expresamente autorice al Tesorero de Puerto Rico para exigir y cobrar, por la vía sumaria de apremio, embargo y venta en pública subasta, ni en ninguna otra forma, recargos, intereses, multas y costas sobre las cantidades que algún importador o vendedor de gasolina hubiere dejado de pagar dentro del término fijado por la ley o los reglamentos. El Tesorero apelante insiste, sin embargo, en que él está legalmente facultado para imponer y cobrar sumariamente todas esas penalidades a los contribuyentes morosos, y cita como base de su autoridad la sección 1 de la Ley núm. 40, supra, que dispone que el impuesto sobre la gasolina *tendrá el carácter de renta interna y además, que será cobrado por el Tesorero de Puerto Rico, con sujeción a las disposiciones de la Ley de Rentas Internas.* La ley a que se hace referencia en la citada sección 1 de la Ley 40 de 1931, es la núm. 85 de agosto 20 de 1925 (Leyes de 1925, pág. 585); y las secciones de dicha ley que se trata de incorporar a la Ley núm. 40, supra, por medio de tal referencia, leen así:

''Sección 75.—El Tesorero de Puerto Rico queda por la presente autorizado para imponer y cobrar, mediante procedimientos administrativos, a toda persona que dejare de observar cualesquiera de dichos

reglamentos, y en los casos de infracciones menos grave de esta Ley, una multa que no exceda de veinte y cinco (25) dólares por cada infracción, o podrá, a su juicio, denunciar a dicha persona ante el correspondiente tribunal por faltar a los reglamentos o por cometer una infracción de la ley.

"Cuando el Tesorero de Puerto Rico impusiere una multa administrativa según queda dispuesto anteriormente, y no se efectuare el pago, dicho funcionario podrá incoar procedimientos de apremio para hacer efectiva dicha multa.

"    .    .    .    .    .    .    .

"Sección 105.—Cuando alguna persona obligada por esta Ley al pago de los impuestos señalados en ella, no lo efectuare dentro del tiempo fijado, el Tesorero de Puerto Rico o sus agentes, debidamente autorizados por éste, quedan facultados para embargar y vender en pública subasta bienes del deudor, de acuerdo con el procedimiento establecido en el Código Político, para hacer efectivas las contribuciones impuestas sobre la propiedad y no satisfechas, concediéndose al contribuyente derecho de redención en los mismos términos y extensión dispuestos en dicho código."

El Tesorero admite que las leyes que hemos citado no le autorizaban a imponer y cobrar penalidades e intereses a la peticionaria, por no haber ésta pagado a su debido tiempo los impuestos sobre la gasolina que importó dos días después del 24 de julio de 1931, fecha en que empezó a regir la Ley núm. 40 del mismo año; pero insiste en que la Sección 105 de la Ley de Rentas Internas, supra, que empezó a regir en octubre 1°. de 1925, autoriza al Tesorero para cobrar los impuestos por el mismo procedimiento que establecen los artículos 335–352 del Código Político para hacer efectivas las contribuciones sobre la propiedad.

Continúa arguyendo el apelante, que con anterioridad al 19 de enero de 1934, fecha en que la peticionaria importó 1,243,705 galones de gasolina, sobre los cuales debía pagar $87,059.35 de impuestos de 7 centavos por galón, la Ley núm. 40 de 1931 había sido ya suspendida por la Ley núm. 15 de 24 de agosto de 1933, ((2) pág. 81), que empezó a regir el mismo día, la cual contiene las siguientes disposiciones:

"Sección 1.—En virtud de esta Ley se impone, se cobrará y se pagará por una vez solamente, una contribución de rentas internas en la suma de siete (7) centavos por cada galón de gasolina que se introduzca, fabrique, venda o consuma, o que de otro modo se disponga de ella para el consumo en Puerto Rico; y dicha contribución será cobrada por el Tesorero de Puerto Rico adhiriendo y cancelando los sellos de rentas internas que él prescriba con tal objeto; *Disponiéndose,* que esta contribución tendrá el mismo carácter que tienen las contribuciones de rentas internas, y, por lo tanto, se aplicará de un modo uniforme y general tanto a la gasolina producida en países extranjeros que se traiga a Puerto Rico, como a la que se produzca en la Isla, y dicha contribución la cobrará el Tesorero de Puerto Rico sujeta a las disposiciones de la Ley de Rentas Internas tan pronto como se fabrique o se produzca o se introduzca la gasolina en Puerto Rico, adhiriendo y cancelando los sellos de rentas internas en aquellos documentos que el Tesorero determinare a tal objeto; . . .

" . . . . . . . . . .

"Sección 6.—Toda ley o parte de ley que se oponga a la presente, queda por ésta derogada, excepto las disposiciones contenidas en la Ley No. 40 aprobada en 24 de abril de 1931, así como también las de la Resolución Conjunta No. 74 de 1931 según rigen en esta fecha que quedan en suspenso hasta el día 30 de junio de 1934 y en dicha fecha, dicha Ley No. 40 de 1931 y Resolución Conjunta No. 74 de 1931 según rigen en esta fecha quedarán en todo en vigor y restablecidas sus disposiciones tal y como si esta Ley no hubiera sido aprobada."

Y alega el Tesorero, que en febrero de 1934, cuando la peticionaria pagó los impuestos a que se refieren las dos causas de acción expuestas en la demanda, la Ley núm. 40 de 1931 estaba en suspenso, rigiendo en esa fecha la Ley núm. 15 de agosto 24, 1933; y que por la referencia que en su Sección 1 se hace a la Ley de Rentas Internas, también regía ésta en la forma en que había sido enmendada hasta agosto 24 de 1933.

La Ley de Rentas Internas, núm. 85 de 1925 (pág. 585), fué enmendada por la Ley núm. 83 de mayo 6 de 1931. Las secciones pertinentes al caso de autos, en la forma en que quedaron enmendadas por la citada ley, leen así:

"Sección 37.—Los traficantes serán responsables del pago del

impuesto sobre todos los artículos introducidos por ellos, bien fueran para la venta, traspaso, uso o consumo, al introducirlos o al tomar posesión del artículo o artículos en Puerto Rico, o al traspasar los mismos a otro traficante o consumidor, después de haberlos introducido.

"Sección 38.—La persona que use o consuma el artículo tributable será responsable del pago del impuesto al introducir o poseer el artículo para uso o consumo en Puerto Rico, o al traspasar el mismo a otra persona, sea cual fuere su propósito.

"Sección 39.—Los impuestos que por esta Ley se prescriben sobre artículos tributables en Puerto Rico, bien sean para la venta, traspaso, uso, consumo o introducción en Puerto Rico, se impondrán de acuerdo con las disposiciones de la sección 4 de esta Ley; sobre todos los artículos cuya venta, traspaso, uso, fabricación, consumo o introducción estén sujetos al pago de arbitrios bajo las disposiciones de la sección 16, y serán pagados por el traficante o por el que los use o consuma, al introducirlos o al tomar posesión del artículo o al traspasarlos, o al poseer el mismo, bien sea por traspaso o introducción o por compra, donación o de otro modo, dentro de los diez (10) días siguientes a la introducción del artículo o de haberlo poseído o traspasado o al tomar posesión del mismo por traspaso, y de acuerdo con las reglas que el Tesorero por reglamento prescribiere; . . .

" . . . . . . . . .

"Sección 50.—Cuando una persona obligada por esta Ley a pagar un arbitrio sobre artículos manufacturados, vendidos, traspasados, usados, consumidos o introducidos en Puerto Rico, no lo hiciere en el tiempo y en la forma establecida, además de ser culpable de un delito menos grave (*misdemeanor*) pagará en adición a dicha contribución, y como parte de ella, en concepto de penalidad, un cinco (5) por ciento de la cantidad adeudada e intereses a razón del 1 por ciento mensual, computables desde la fecha en que se vencieren los diez (10) días de término concedidos por la sección 39 de esta Ley, o según prescriba por reglamento el Tesorero de Puerto Rico."

Y la sección 7 de la ley enmendatoria núm. 83 de 1931 (pág. 505), supra, lee así:

"Sección 7.—A partir de la fecha en que empiece a regir esta Ley las licencias y otras contribuciones adeudadas hasta esa fecha y que pudiera adeudar cualquier contribuyente a El Pueblo de Puerto Rico por virtud de las secciones de la ley enmendadas y las leyes derogadas, quedan subsistentes y el Tesorero de Puerto Rico facultado para su cobro en la misma forma provista en dichas leyes derogadas;

*Disponiéndose,* que en el caso de artículos o efectos incluídos en esta Ley que hubieren sido introducidos en Puerto Rico con anterioridad a la aprobación de esta Ley, y que no hubieren sido declarados y liquidados por el Departamento de Hacienda para los efectos de la contribución, pagarán la misma de acuerdo con las disposiciones aquí contenidas y según las reglas y reglamentos que prescribiere al efecto el Tesorero de Puerto Rico.''

Son estas dos últimas leyes, la núm. 15 de 24 de agosto, de 1933, en cuanto a lo sustantivo, y la Ley de Rentas Internas de 1925, según quedó enmendada por la Ley núm. 83 de mayo 16, 1931, en cuanto a lo procesal, las que invoca el Tesorero para sostener su actuación en relación con el cobro de recargos, intereses, multas y costas sobre la gasolina importada en julio 26 de 1931 y también sobre la importada en enero 19 de 1934.

Para poder determinar cuál es la ley aplicable a los hechos que hemos relacionado, debemos fijar antes las fechas en que nació la obligación por parte de la corporación peticionaria de pagar los impuestos reclamados por el Tesorero, sobre (*a*) la gasolina importada antes de julio 24, 1931; (*b*) la gasolina importada en julio 26 de 1931; y (*c*) la gasolina importada en enero 19 de 1934.

(*a*) La Ley aplicable a la gasolina importada antes de julio 24 de 1931, es la Ley núm. 12 de abril 21, 1930, que enmendó las secciones 1 y 2 de la núm. 8 de mayo 11 de 1927, la que a su vez enmendó las secciones 1 y 3 de la Ley núm. 52 de 21 de julio de 1925, siendo esta última la que derogó el inciso 37 de la sección 20 de la Ley de Arbitrios de 28 de julio de 1923. Ninguna de dichas leyes autorizaba al Tesorero de Puerto Rico para imponer penalidades, tales como recargos, intereses, multas y costas, en el caso de que los impuestos no fueran pagados dentro del término fijado por la ley. La sección 4 de la Ley 52 de 21 de julio de 1925, es la que fija el momento en que se contrae la obligación de pagar el impuesto. Dice así:

''Sección 4.—El impuesto que por esta ley se prescribe sobre la gasolina destinada a la venta o consumo en Puerto Rico, pesará sobre

la misma al encontrarse en el mercado de Puerto Rico. Los traficantes efectuarán el pago de los impuestos al vender la gasolina. . .''

De acuerdo con los términos de la sección 4, supra, la gasolina importada antes de julio 24, 1931, quedó sujeta al impuesto de seis (6) centavos por galón tan pronto como se encontró en el mercado de Puerto Rico, o sea desde el momento en que se importó con el propósito de consumirla o venderla en la Isla. Y si la compañía importadora dejó de pagar los impuestos dentro de los diez días siguientes a la fecha en que se recibió la gasolina en Puerto Rico, según lo dispuesto por los reglamentos de la Tesorería, el Tesorero de Puerto Rico pudo, de acuerdo con la sección 5 de la misma ley, incoar contra la compañía importadora un proceso criminal por delito de *misdemeanor* y embargar, confiscar y vender para beneficio del gobierno toda la gasolina sobre la cual no se hubiere pagado el impuesto.

Después de estudiar cuidadosamente la Ley núm. 12 de abril 21 de 1930 y toda la legislación anterior a ella sobre la misma materia, debemos resolver que el Tesorero de Puerto Rico no estaba legalmente autorizado para imponer a la peticionaria recargos, intereses, multas y costas por no haber pagado a tiempo los impuestos sobre los 24,491 galones de gasolina importados antes del 24 de julio de 1931 y mucho menos para proceder al cobro de tales penalidades por la vía sumaria de apremio, embargo y venta en pública subasta de las propiedades de la peticionaria; y que tampoco estaba autorizado dicho funcionario para embargar, confiscar y vender sumariamente, aun cuando fuera en cobro de los impuestos, otras propiedades que no fueran la misma partida de gasolina sobre la cual se hubiere dejado de pagar el impuesto.

(*b*) La gasolina (155,827.52 galones) recibida por la peticionaria en 26 de julio de 1931, en Puerto Rico, quedó desde esa fecha sujeta a las disposiciones de la Ley núm. 40 de abril 24 de 1931, la que empezó a regir el 24 de julio del mismo año. La peticionaria así lo ha admitido al pagar los impuestos al tipo de siete centavos por galón fijado por

dicha ley, la cual derogó expresamente la núm. 12 de abril 21, 1930.

La nueva Ley núm. 40 de 1931, introdujo la modificación de dar al impuesto el carácter de renta interna y de facultar al Tesorero para cobrarlo *con sujeción a las disposiciones de la Ley de Rentas Internas,* tan pronto como la gasolina sea introducida en Puerto Rico. Dicha Ley núm. 40¹ no contiene cláusula penal alguna, pero el Tesorero pretende derivar su autoridad para imponer las penalidades envueltas en este litigio, de la facultad que le confiere la sección 1 de la citada ley para cobrar el impuesto con sujeción a las disposiciones de la Ley de Rentas Internas.

Debemos, por lo tanto, resolver, primero, si la Ley de Rentas Internas (Ley núm. 85 de agosto 20, 1925, vigente en 26 de julio de 1931, fecha de la importación de la gasolina, autoriza al Tesorero para la imposición de penalidades, y, segundo, si esas penalidades pueden ser legalmente incorporadas a la Ley núm. 40 de 1931, por la simple referencia que a la Ley de Rentas Internas se hace en la sección 1 de dicha ley.

Las secciones 75 y 105 de la citada Ley de Rentas Internas sólo autorizan al Tesorero para imponer multas administrativas, no mayores de $25, por cada infracción de la ley o de los reglamentos, *y para proceder al cobro de los impuestos* mediante embargo y venta en pública subasta de bienes del deudor, de acuerdo con el procedimiento establecido por los artículos 335–352 del Código Político. En ninguna de las leyes que hemos citado hemos podido encontrar autorización legal que justifique el embargo practicado y la venta que ha intentado llevar a efecto el Tesorero, para cobrar recargos, intereses y penalidades no provistas por la ley, y por consecuencia tenemos que resolver que dicho embargo es contrario a ley y debe ser disuelto.

(*c*) La ley aplicable a la importación de gasolina (1,243,705 galones) hecha en enero 19, 1934, es la núm. 15 de 1933, que enmendó y suspendió la núm. 40 de 1931 y empezó a regir

el 24 de agosto de 1933. La sección 1 de dicha ley, supra, dispone que el impuesto de la gasolina tendrá el carácter de renta interna, y que *dicha contribución la cobrará el Tesorero de Puerto Rico sujeta a las disposiciones de la Ley de Rentas Internas tan pronto como se introduzca la gasolina en Puerto Rico.* La Ley de Rentas Internas vigente a la fecha de la importación de esta partida de gasolina era la Ley núm. 85 de 1925, enmendada por la núm. 83 de 1931. Las secciones 39 y 50 de la Ley de Rentas Internas, según quedaron enmendadas por la Ley núm. 83 de 1931 y la sección 7 de esta última ley, *ubi supra,* son invocadas por el Tesorero apelante como base de su alegada facultad legal para cobrar, no sólo las penalidades impuestas a la partida de gasolina importada en enero 19 de 1934, sino también, dándole efecto retroactivo a las enmiendas, los recargos, intereses y penalidades impuestos a las partidas que hemos discutido en la párrafos (*a*) y (*b*), supra.

▮ No podemos aceptar ni sancionar la práctica que pretende seguir el Tesorero, de aplicar a omisiones incurridas o actos realizados durante la vigencia de las leyes núms. 12 de 1930 y 40 de 1931, penalidades provistas y autorizadas por leyes posteriores a dichos actos u omisiones, como lo es la Ley núm. 83 de 1931. Las disposiciones de la sección 50 de la Ley de Rentas Internas, enmendada por la Ley núm. 83 de 1931, supra, por ser de naturaleza penal no pueden ser aplicables retroactivamente ni por disposición legislativa expresa ni por interpretación judicial, por oponerse a ello la declaración de derechos de nuestra Carta Orgánica. En su consecuencia, resolvemos que los intereses, recargos y costas impuestos sobre la partida de gasolina importada en julio 26 de 1931, son injustificados e ilegales y que la corte inferior procedió correctamente al expedir el auto de *injunction* para impedir su cobro por la vía sumaria.

▮ Tampoco es sostenible la multa de $100 impuesta por el Tesorero apelante sobre la partida de gasolina importada en julio 26, 1931. La sección 88 de la Ley de Arbitrios (núm.

68 de julio 28 de 1923), que autorizaba al Tesorero de Puerto Rico para imponer multas administrativas, fué mantenida en toda su fuerza y vigor por disposición expresa de la sección 6 de la Ley núm. 52 de julio, 1925, que derogó el inciso 37 de la sección 20 de la Ley de Arbitrios y eliminó a la gasolina de la lista de artículos sujetos al pago de arbitrios. La Ley núm. 40 de 24 de abril de 1931, que según hemos resuelto es la aplicable a dicha partida de gasolina importada el 26 de julio de 1931, es una ley completa sobre la materia de impuestos a la gasolina y no contiene disposición alguna que autorice la imposición de penalidades. Su sección 3 deroga expresamente la Ley núm. 12 aprobada en abril 21 de 1930 y también cualquier otra ley o parte de ley que a ella se opusiere. Y no contiene disposición alguna para incorporar a ella las cláusulas penales de las otras leyes de contribuciones o arbitrios, ni para dejar vigente, en cuanto a la falta de pago del impuesto sobre la gasolina, la citada sección 88 de la Ley de Arbitrios de 1923.

■ La jurisprudencia que hemos examinado sostiene como regla apoyada por el peso de las autoridades, que cuando se deroga un estatuto que impone penalidades a los contribuyentes morosos, dichas penalidades dejan de ser imponibles, y el derecho de recobrar penalidades impuestas con anterioridad a la derogación de la ley se pierde, a menos que ese derecho sea expresamente reservado por la ley derogatoria. Véanse: *Western Union Tel. Co.* v. *Brown*, 8 N. E. 171; y *Dixon* v. *Jersey City*, 37 N. J. Law, 39, 42 en que se sostuvo que la derogación del estatuto, después de haber sido impuesta una penalidad, equivale a una remisión de la pena y tiene el mismo efecto de un perdón, que levanta el castigo y extingue la culpabilidad. Véase también 39 C. J. 1484.

■■ Veamos ahora si las penalidades impuestas por el Tesorero a la gasolina importada en enero 19, 1934, están autorizadas por la ley.

Las penalidades que el Tesorero ha impuesto a la peticionaria, son las que autoriza la sección 50 de la Ley de Rentas

Internas, según fué enmendada por la Ley núm. 83 de mayo 6, 1931, cuyas disposiciones se pretende incorporar a la Ley núm. 15 de 24 de agosto de 1933, por virtud de la referencia que en su sección 1 se hace a la Ley de Rentas Internas, como la ley que deberá servir de norma al Tesorero para el cobro del impuesto.

Pasaremos por alto la cuestión de si la incorporación por referencia que se ha intentado hacer se ajusta a las prescripciones del artículo 34 de la Ley Orgánica. Y, asumiendo que la incorporación se ha hecho correctamente, veamos si las disposiciones penales de la sección 50 de la Ley de Rentas Internas, supra, pueden en manera alguna ser aplicables al caso de autos.

La citada sección 50 dispone que *cuando una persona obligada por esta Ley* (la de Rentas Internas) *a pagar un arbitrio sobre artículos introducidos en Puerto Rico,* no lo hiciere, se le impondrán las penalidades autorizadas por la misma sección. Es evidente, de acuerdo con la regla de hermenéutica legal que nos obliga a interpretar los estatutos de carácter fiscal y especialmente los que imponen penalidades, en favor del contribuyente y en contra del Estado, que las penalidades que autoriza la sección 50 de la Ley de Rentas Internas sólo pueden ser impuestas a aquellas personas que estando obligadas a pagar arbitrios fijados por la misma Ley de Rentas Internas, dejaron de pagarlos.

¿Cuáles son los arbitrios fijados por la Ley de Rentas Internas, por falta de pago de los cuales puede una persona incurrir en las penalidades de la sección 50? La contestación la encontramos en la Sección 39 de la misma Ley de Rentas Internas, supra, que prescribe que los arbitrios se impondrán y se cobrarán sobre todos los artículos cuya venta, consumo o introducción estén sujetos al pago de arbitrios bajo las disposiciones de la Sección 16 de la misma Ley de Rentas Internas. Hemos leído cuidadosamente la referida sección 16, y no hemos podido encontrar "la gasolina" entre los artículos sujetos al pago de arbitrios.

Si la Legislatura tuvo la intención de hacer extensivas las penalidades prescritas por la Sección 50 de la Ley de Rentas Internas, supra, al caso de falta de pago de impuestos sobre la gasolina, pudo haber manifestado esa intención haciendo constar en la sección 1 de la Ley núm. 15 de agosto 23 de 1933 que los impuestos serían cobrados con sujeción a la Ley de Rentas Internas y que la falta de pago sería castigada también de acuerdo con dicha ley. No lo hizo así el legislador y su silencio no puede ser suplido por una interpretación judicial, que no estaría justificada y que resultaría forzada, vistas las limitaciones contenidas en la propia ley que por referencia se trata de incorporar a la Ley núm. 15, supra. Y con mayor facilidad aún se hubiera podido llevar a efecto el alegado propósito punitivo del legislador, mediante una simple enmienda a la sección 50 de la Ley de Rentas Internas, para hacer extensivas sus penalidades, no sólo a las personas que dejaren de pagar los arbitrios fijados por dicha ley en su sección 16, sino también a las que dejaren de pagar el impuesto sobre la gasolina.

No es función de este tribunal corregir las deficiencias que encuentre en la legislación sometida a su estudio e interpretación. Lo único que podemos hacer es señalar esas deficiencias, para que ellas sean corregidas por el Poder Legislativo. Y cuando la legislación es de carácter fiscal o penal y su estudio deja serias dudas en el ánimo del juzgador, en cuanto a la intención de la Legislatura, es nuestro deber dar el beneficio de esas dudas al contribuyente. Por esos motivos, resolvemos que el Tesorero no está legalmente facultado para imponer las penalidades que ha impuesto y tratado de cobrar en el caso de autos. Véanse: *Gould* v. *Gould*, 245 U. S. 151; *U. S.* v. *Field*, 255 U. S. 257; *U. S.* v. *Riggs*, 203 U. S. 136; *U. S.* v. *Merriam*, 263 U. S. 179; *Crooks* v. *Harrelson*, 282 U. S. 55; *First Trust & Saving Bank* v. *Smictanka*, 268 Fed. 231; y *Elliott* v. *Railroad Co.*, 99 U. S. 573, en el que la Corte Suprema Federal resolvió que las penalidades de los esta-

tutos fiscales deben ser impuestas expresamente y no por deducciones o por meras referencias a' otras leyes.

Ha alegado el Tesorero apelante que la corte procedió erróneamente al. asumir jurisdicción y al decretar el *injunction*, primero, porque la peticionaria tenía un remedio legal adecuado para su protección, o sea pagar las cantidades reclamadas por el Tesorero bajo protesta, y segundo, porque la ley prohibe la expedición de un auto de *injunction* para impedir el cobro de contribuciones, excepto en casos excepcionales.

De los autos aparece que la peticionaria compró sellos de rentas internas en cantidad suficiente para cubrir todas las sumas reclamadas por el Tesorero por concepto de impuestos a la gasolina; que adhirió dichos sellos a las facturas correspondientes, cancelando e inutilizando dichos sellos y entregando dichas facturas al Tesorero; y que en el caso en que el Tesorero se negó a aceptar las facturas, por haber rehusado la peticionaria pagar las penalidades que consideraba ilegales, la peticionaria depositó las facturas en la Secretaría de la corte a disposición del Tesorero. El Gobierno, pues, ha recibido e ingresado en el Tesoro, sin restricción alguna, mediante la venta de sellos a la peticionaria, una cantidad igual a la suma total de los impuestos reclamados por el Tesorero de Puerto Rico sobre las tres partidas de gasolina envueltas en este litigio. No es un remedio adecuado en este caso el del pago bajo protesta, pues habiendo el Tesorero embargado propiedades de la peticionaria por el montante total de los impuestos que ya habían sido pagados y además por el importe de las penalidades en cuestión, la peticionaria se hubiera visto obligada, para detener la venta en pública subasta, a pagar por segunda vez una cantidad igual a la que ya había invertido en sellos de rentas internas y a pagar además el importe de las penalidades.

Es cierto que la regla general es que las Cortes de Equidad no intervienen por medio de *injunction* para impedir el cobro de contribuciones, por la simple alegación de que dichas

contribuciones son ilegales o violan algún precepto constitucional. Esta Corte Suprema ha reconocido y aplicado esa doctrina en numerosas decisiones, que por ser harto conocidas creemos innecesario citar. Pero no es menos cierto que las Cortes de Equidad conceden el remedio de *injunction* para impedir el cobro de contribuciones, cuando aparece claramente que la contribución es ilegal y que el contribuyente no tiene un remedio adecuado en ley o que permitir el cobro de la contribución le causaría daños irreparables o resultaría en una multiplicidad de pleitos. Los tribunales federales han concedido *injunctions* en numerosos casos para impedir el cobro de contribuciones, a pesar de la prohibición expresa de los estatutos federales (Rev. Stat., sec. 3224, U.S.C.A., Título 26, sec. 154), cuando las circunstancias del caso son extraordinarias y suficientes para justificar la intervención de la equidad, evitando daños irreparables o una multiplicidad de pleitos. Véanse: *Raymond* v. *Chicago Traction Co.,* 207 U. S. 20; *Dodge* v. *Brady,* 240 U. S. 122, 126; *Hill* v. *Wallace,* 259 U.S. 65; *Hopkins* v. *Southern Cal. Tel. Co.,* 275 U. S. 399; *Standard Nut Margarine Co.* v. *Rose,* 49 Fed. (2) 85; *Long* v. *Rasmussen,* 281 Fed. 236; *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498; *Acklin* v. *People's Savings Assn.,* 293 Fed. 393.

Esta Corte Suprema ha seguido la doctrina establecida por la jurisprudencia federal y ha sostenido el poder que tienen nuestros tribunales, en casos extraordinarios, para proteger a los ciudadanos contra las imposiciones arbitrarias o ilegales de los agentes fiscales del Gobierno. Véanse: *González* v. *Gromer,* 16 D.P.R. 1; *Durlach Brothers* v. *Domenech,* 47 D.P.R. 654.

El caso de autos presentaba circunstancias y hechos tan extraordinarios, que es nuestra opinión que la corte usó debidamente su discreción al dictar el auto de *injunction.* El contribuyente pagó al Tesoro la cantidad exacta que se le reclamaba en concepto de impuestos, negándose solamente a pagar lo que se le reclamaba en concepto de penalidades

454

que el Tesorero no estaba autorizado a imponer. Extralimitóse el Tesorero al embargar sumariamente y tratar de vender en pública subasta propiedades suficientes para cubrir el importe de contribuciones ya pagadas en sellos de Rentas Internas, más el importe de las penalidades. El remedio legal de pago bajo protesta resultaba, dentro de las circunstancias del caso, claramente inadecuado, toda vez que el contribuyente se hubiese visto obligado a pagar por segunda vez el importe de los impuestos y a iniciar dos pleitos, uno para recobrar el importe de los sellos cancelados y otro para recobrar el importe de las penalidades ilegalmente impuestas. La continuación del embargo y la venta en pública subasta de las propiedades que eran necesarias para el negocio de la peticionaria, sin duda alguna habían de causar a ésta daños irreparables.

*Creemos que se debe confirmar y se confirma la resolución apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.