E. Solé & Cía., S. en C., demandante y apelada, *v.* Manuel V. Domenech, sustituído por R. Sancho Bonet, Tesorero de Puerto Rico, demandado y apelante.

Núm. 7350.—*Sometido:* Enero 24, 1938.  *Resuelto:* Julio 30, 1938.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

Respondiendo a una orden para mostrar causas por las cuales no debía expedirse un *injunction pendente lite* en una acción para impedir el cobro de ciertas contribuciones, el Tesorero de Puerto Rico radicó una moción para desestimar el recurso por falta de jurisdicción y por falta de equidad. Estos dos fundamentos fueron expresados en una forma más elaborada a través de diez razones específicas.

La corte de distrito, luego de celebrarse una vista en la que se presentó alguna prueba, declaró sin lugar la moción y expidió un *injunction* preliminar.

De la demanda tomamos los siguientes hechos alegados:

La demandante se dedicaba, y siempre se ha dedicado desde su establecimiento, a la fabricación, producción y venta de camiones (*trucks*) y ómnibus (*guaguas*) de todas clases; entre los materiales usados en esta industria se incluían ciertas piezas o unidades conocidas con el nombre de *chassis*, que eran utilizadas por la demandante como materia prima indispensable para el funcionamiento y explotación de dicha industria; el día 11 de enero de 1932, la Comisión de Servicio Público de Puerto Rico, a petición de la demandante, declaró industria nueva a la referida industria y resolvió literalmente lo siguiente: "Eximir, como por la presente se exime, del pago de toda clase de contribuciones, de conformidad con lo dispuesto en la ley vigente sobre el particular, o sea, la Ley núm. 40, aprobada el 25 de abril de 1930, a E. Solé & Cía., S. en C., de San Juan, en la industria que tiene instalada, consistente en la fabricación y montura de carrocerías de todas clases, cajas, *chassis*, plataformas y capotas para toda clase de vehículos''; en su resolución la Comisión fijó el día 14 de enero de 1934 como la fecha en que expiraba el término de dicha exención, y en julio 15 de 1934 prorrogó dicho término hasta el día 14 de enero de 1939; entre los *chassis* necesariamente usados por la demandante en dicha industria estaban los siguientes:

núm. G-516,200, Modelo 241, núm. G-516,247, Modelo 241 y núm. G-516,254, Modelo 241, los cuales fueron importados por la demandante de los Estados Unidos para ser usados, y fueron usados, por la demandante, en su dicha industria como materia nueva (sic) necesaria a los fines de la misma; el día 2 de julio de 1934, el Subtesorero de Puerto Rico, actuando en representación del Tesorero, requirió el pago de $872.52 por concepto de contribuciones impuestas bajo el artículo 105 de la Ley de Rentas Internas, y que se reclamaban a virtud de la importación y uso de dichos *chassis;* el día 20 de julio de 1934 el Tesorero embargó un camión marca ''Diamond T'', propiedad de la demandante, para asegurar el pago de la expresada suma de $872.52, más los recargos, hasta hacer un total de $978.20, y la demandante fué apercibida de que si no pagaba la contribución dentro de diez días, la propiedad embargada sería vendida con el fin de recobrar el importe de las mencionadas contribuciones, penalidades y costas; el demandado no tenía jurisdicción ni autoridad para imponer o cobrar la contribución aludida sobre materiales necesarios para el funcionamiento y explotación de dicha industria; el cobro de la referida contribución sujetaba a la demandante y a su industria a dificultades que ponían en peligro la marcha y existencia de la aludida industria, la cual estaba sufriendo las consecuencias de la depresión económica y la cual había concedido créditos y desarrollado sus actividades de acuerdo con cálculos y planes fundados en el hecho de hallarse exenta del pago de las referidas contribuciones; los daños que el demandado causaría a la demandante y a su industria, de permitirse al demandado proceder al cobro de dicha contribución, eran de naturaleza irreparable, siendo imposible fijar la extensión y alcance de los mismos; la imposición y cobro de dicha contribución eran contrarios a lo dispuesto en la Ley núm. 40 de 1930 y a las órdenes dictadas por la Comisión de Servicio Público mencionadas en la demanda, a la Ley Orgánica y a la Enmienda Décimocuarta de la Constitución de los Estados Unidos; de permitirse al demandado imponer y cobrar la contribución, la demandante se vería obligada a pagar la misma bajo protesta cada vez que importase algún *chassis* para ser usado en su dicha industria y a solicitar su devolución en un pleito ordinario, lo que traería por consecuencia una multiplicidad de procedimientos, toda vez que la demandante con frecuencia importa tales *chassis* para ser usados en su referida industria; no existía ningún remedio legal ordinario para impedir al demandado que cobrase dicha contribución, y de no ser impedido mediante *injunction,* el

demandado la cobraría, por carecer la demandante de otro remedio adecuado para impedir el cobro de dicha contribución.

Por medio de negativas y afirmaciones el demandado puso en controversia las alegaciones esenciales de la demanda y presentó seis defensas especiales.

El socio gestor de la demandante declaró substancialmente como sigue:

Solé & Cía. se dedica desde fines del año 1931 al negocio de construcción de guaguas, camiones, guaguas de entregas, accesorios y capotas para estos vehículos; los viejos vehículos, al comprarse, son desarmados y reconstruídos; la carrocería y la cabina son construídas y el *chassis* se modifica enteramente y las partes dañadas son cambiadas; la materia prima se obtiene parte en los Estados Unidos y parte en Puerto Rico; los *chassis* son traídos de Estados Unidos y las lámparas y la instalación eléctrica son también traídas de los Estados Unidos; los *chassis* son alterados, esto es, son alargados o acortados, según convenga y las sopandas son reforzadas; los *chassis* son también reforzados poniéndole vigas de hierro; la instalación eléctrica es alterada de acuerdo con la clase de vehículo que hay que entregar; las gomas son cambiadas y sustituídas por otras de un tamaño adecuado al vehículo; los aros de las ruedas son también cambiados de acuerdo con el tamaño de la goma que se va a usar; las contribuciones se pagan sobre los *chassis* que se importan y se venden, tal como han sido recibidos; esto ha sido hecho siete u ocho veces; las guaguas que han de ser montadas sobre los *chassis* se construyen casi totalmente con materiales comprados en Puerto Rico; en cuanto a los camiones, el *chassis* también se modifica de acuerdo con la clase de camión que se va a entregar; si la plataforma es grande, hay que alargar el *chassis;* hay que reforzar las sopandas; hay que cambiar las gomas; hay que reforzar el *chassis* con vigas (*crossmembers*); las guaguas de entregas también se hacen de materiales comprados en Puerto Rico; también la madera, pintura, materiales eléctricos, el zinc, el material de capotas; desde los comienzos de su actual negocio, la demandante contaba con la exención de contribuciones y sabía que la exención había sido concedida a otras industrias análogas; a fines del año 1931 la demandante obtuvo una exención de la Comisión de Servicio Público; la caja de una guagua es la parte que va encima del *chassis* y forma parte del *chassis* porque va agarrada con unas vigas que se le ponen al *chassis* a todo lo ancho; la demandante fabrica los asientos—las partes de hierro y otros materiales se compran en Puerto Rico; los

*chassis* se traen de los Estados Unidos; la demandante no fabrica *chassis* "Diamond T", pero los "reforma"; la "reforma" consiste en alargar o acortar el *chassis;* el chassis se alarga, poniéndose vigas a la parte de atrás del marco porque generalmente las guaguas son más largas que el *chassis* y para que la guagua esté bien apoyada, hay que poner unas vigas de acero a la parte de atrás; también hay que poner travesaños (*cross-bars*); hay que alargar y reforzar el marco (*frame*); se pone una viga a cada lado del marco o se usa una viga en forma de "Y" para alargar el marco y hay que ponerle un travesaño para cruzar la "Y"; luego hay que poner unas vigas transversales para sostener la guagua en los costados, porque la guagua es mucho más ancha que el *chassis;* generalmente estas vigas son de hierro, soldadas o remachadas al propio *chassis;* las sopandas tienen que ser cambiadas porque siempre vienen muy flojas; éstas son reforzadas por cuatro o cinco hojas de repuesto; los "clips" y los tornillos centrales son cambiados; algunas veces la posición de las sopandas es cambiada con el objeto de traer el eje trasero para atrás; la demandante no fabrica *chassis;* el mismo procedimiento se sigue con respecto a los camiones y a las guaguas de entregas; si se obliga a la demandante a pagar contribuciones sobre los tres *chassis* descritos en la demanda o sobre otros 250 ó 260 *chassis* usados en la fabricación de vehículos de motor, ello significaría la ruina de la industria de la demandante; el Tesorero no ha tratado de cobrar contribuciones sobre los vehículos vendidos con posterioridad a la venta de los tres vehículos; los vehículos vendidos antes y después de esa época "están en las mismas circunstancias"; los daños irreparables consistirían en que la demandante tendría que pagar la contribución sobre los tres vehículos, cuya contribución la demandante no le ha cobrado al cliente.

La demandante ofreció en evidencia una copia de un documento fechado marzo 4, 1934, y firmado por el Presidente y por los miembros de la Comisión de Servicio Público. Este documento se intitula así:

"En la Comisión de Servicio Público de P. R.—*In re:* Reconsideración de las solicitudes de prórrogas de exenciones de contribuciones concedidas a E. Solé & Cía., S. en C., A. Alvarez & Hnos., Pedro A. Pizá, Andréu Aguilar & Co., Figueroa & Gautier y West India Machinery & Supply Company.—Casos núms. J-3680, J-3328, J-3596, J-3734, J-3720 y J-3597.—Reconsideración y resolución *nunc pro tunc,* en todos y cada uno de los casos relacionados en el epígrafe."

El demandado se opuso basándose en que la evidencia sobre la prórroga del término era inadmisible hasta que no se mostrase una declaración de exención. La demandante ofreció que produciría luego una copia certificada de todas las resoluciones pertinentes. El juez admitió el documento con la condición de que la demandante presentase los documentos anteriores a que se hizo referencia y le concedió tres días a la demandante para presentar dichas resoluciones. El único documento que se presentó y se introdujo en evidencia posteriormente por la demandante fué el siguiente:

"En la Comisión de Servicio Público de Puerto Rico
"*In re:*

"Caso núm. J.-3680

"E. Solé & Cía., S. en C.,
    "Peticionaria,

"Petición.

"Interesando exención de contribuciones y otros derechos, por concepto de industria nueva, de acuerdo con la Ley núm 40 de abril 25 de 1930.

---

"A la Honorable Comisión:

"Comparece el peticionario arriba indicado, E. Solé & Cía., S. en C., San Juan, representado por su socio gestor Juan Mascaró Soler, y, por conducto del abogado que suscribe, bajo juramento, respetuosamente expone y alega:

"1. Que vuestro peticionario es una sociedad mercantil debidamente legalizada, de acuerdo con las leyes de Puerto Rico, y en la actualidad se dedica a la construcción y venta de camiones, ómnibus y carrozas en general.

"2. Que vuestro peticionario tiene un capital en efectivo de $125,000 que está dedicando a la fabricación, producción, compra, venta, almacenaje, montura, reparación y modificación de carrocerías de todas clases, construcción y monturas de cajas de ómnibus (guaguas) y camiones o *chassis* de automóviles, plataformas y capotas para toda clase de vehículos de motor, así como partes y accesorios de los mismos.

"3. Que los talleres y oficinas de vuestro peticionario se encuentran actualmente por la parada 6½ de la Avenida Ponce de León núm. 28 y 30, Puerta de Tierra, San Juan.

"4. Que para llevar a efecto los fines de la empresa antes mencionada, este peticionario emplea, entre mecánicos, carpinteros, oficinistas, y peones, actualmente, un número no menor de 23 personas diariamente.

"5. Que este peticionario actualmente se dedica, y en lo sucesivo se dedicará, al fomento y desarrollo de una industria o negocio igual al que actualmente se dedica la Auto Body Corporation, Río Piedras, A. Alvarez & Hnos., San Juan, y Pedro A. Pizá, San Juan, quienes con anterioridad a esta fecha han obtenido la exención de contribuciones por orden de esta. Honorable Comisión de Servicio Público, por concepto de industria nueva.

"6. Que la sección 3 de la Ley núm. 40 de abril 25, 1930, es aplicable a este caso para la exención de contribuciones, ya que, una vez concedida a una persona natural o jurídica la exención de contribuciones por el concepto de industria nueva, gozarán del mismo privilegio las demás que se establezcan en Puerto Rico para igual negocio o industria.

"EN VIRTUD DE TODO LO CUAL SOLICITAMOS: que esta Hon. Comisión exima a vuestro peticionario del pago de las contribuciones que determina la mencionada Ley núm. 40 de abril 25 de 1930 por el término que falte a la primera industria, o sea a la Auto Body Corporation, para la extinción de su privilegio.

"San Juan, P. R., 26 de octubre de 1931.

"Respetuosamente,

"(fdo.)   B. Sánchez Castaño.

"Sello de la Comisión.

"Yo, Juan Mascaró Soler, juro: Que me llamo como queda dicho y que soy socio gestor de E. Solé & Cía., S. en C., viudo y vecino de San Juan, que todos los hechos alegados en la petición que precede, redactada por mi abogado Benicio Sánchez Castaño de acuerdo con los informes que le he dado, son ciertos y me constan de propio y personal conocimiento.

"San Juan, P. R., 26 de octubre, 1931.

"(fdo.) J. Mascaró

"Juan Mascaró Soler."

El documento admitido condicionalmente contenía las siguientes disposiciones:

La Comisión había concedido una exención de contribuciones a la Auto Body Corporation, por concepto de industria nueva, consistente en fabricar, producir, comprar, vender, almacenar, montar,

reparar y modificar carrocerías de todas clases, cajas, *chassis*, plataformas y capotas para toda clase de vehículos de motor, por el término de cinco años, cuya exención vencería el 14 de enero de 1934; A. Alvarez & Hnos., Pedro A. Pizá, E. Solé & Cía., West India Machinery & Supply Co., Andréu Aguilar & Co. y Figueroa & Gautier, por dedicarse a igual industria o negocio que la Auto Body Corporation, solicitaron posteriormente que se les eximiera del pago de contribuciones, de acuerdo con la ley vigente núm. 40, aprobada el 25 de abril de 1930, por la parte del término que le faltaba a la Auto Body Corporation. En cada uno de estos casos, después de audiencia pública y de una investigación por los ingenieros de la Comisión, se llegó a la conclusión de que las peticionarias se dedicaban a la misma industria o negocio que la Auto Body Corporation y que las correspondientes órdenes de exención de contribuciones se habían expedido de acuerdo con la Ley núm. 40 aprobada el 25 de abril de 1930, especificándose que dichas industrias nuevas y sus edificios, maquinarias, materiales, franquicias, etc., y en general todos los bienes, derechos y privilegios pertenecientes a dichas industrias, que sean necesarios para su trabajo y funcionamiento, estaban exentos de toda clase de contribuciones por el tiempo que faltaba a la Auto Body Corporation; en abril de 1932 la Auto Body Corporation solicitó una prórroga de su término por un período adicional de cinco años para cubrir el término concedido por la ley, y la Comisión, en agosto de 1932, le concedió a la Auto Body Corporation la prórroga solicitada, extendiendo su exención de contribuciones por cinco años más, que vencerán el 14 de enero de 1939; los peticionarios indicados en el epígrafe continuaban dedicándose al mismo negocio que la Auto Body Corporation y habían solicitado que se les concediera, al igual que a la Auto Body Corporation, una prórroga de las órdenes de exención, y con tal motivo la Comisión celebró las vistas correspondientes el día 15 de enero de 1934; después de oír a las partes interesadas la Comisión había resuelto que había sido siempre su intención la de eximir de contribuciones a todos los componentes que una vez unidos dieran forma a un artículo nuevo y que, cuando así fuera, quedaran exentos de contribuciones todos los distintos componentes del mismo, pero ello no obstante, se excluía del privilegio el *chassis* de algunos camiones construídos por los peticionarios; inmediatamente después de dicha resolución los peticionarios indicados radicaron una moción de reconsideración en cuanto a aquella parte de la mencionada resolución de 15 de enero de 1934, que eliminaba del privilegio de la exención el *chassis* de los camiones construídos

o fabricados por los peticionarios, alegando que tal extremo de dicha resolución afectaba considerablemente su negocio de manera que éste quedaría reducido a una cuarta parte de su volumen, además del hecho de que la exclusión del *chassis* de los camiones fabricados por ellos era ilegal, de acuerdo con la ley y los antecedentes de estos casos; a virtud de la moción de reconsideración, la cual fué notificada a los Departamentos de Justicia y Tesorería, y después de habérsele concedido a ambos departamentos un término razonable para que expusieran todos los puntos legales que tuvieran a bien señalar, se celebraron dos vistas en las cuales los peticionarios estuvieron representados por los abogados Miguel Guerra Mondragón, Juan Bautista Soto, Emilio S. Belaval y Angel M. Villamil, y los Departamentos de Justicia y Tesorería por el Oficial Jurídico Rafael Cordovés Arana; la cuestión envuelta era al efecto de si los *chassis*, cuando se usaban en la fabricación de camiones, debían ser incluídos dentro de la propiedad exenta, no habiendo duda alguna en cuanto a los demás artículos, tales como guaguas, ambulancias, guaguas de entregas, etc.; los peticionarios alegaron que tal como surgía de la reconsideración hecha por la Comisión, los *chassis* habían sido incluídos, según expresamente se dispone en sus órdenes, pero solicitaron oportunidad de aducir nueva prueba sobre este extremo, y la Comisión así lo hizo, dando oportunidad al Tesorero y al Procurador General para que comparecieran; para determinar este extremo se celebró una vista pública el 8 de marzo de 1934 y, después de oír la prueba, los Comisionados Landrón y Delgado llegaron a la conclusión de que los trabajos hechos en relación con los *chassis* y los camiones en la construcción de cajas y cabinas constituyen de por sí trabajos nuevos en una industria que no existía anteriormente en Puerto Rico y que también modificaba la materia prima, parte de la cual existe en los *chassis*, toda vez que se demostró que éstos se alargan, se acortan y se refuerzan, constituyendo un producto nuevo, distinto del que se importa en su estado original; partiendo de la orden de exención concedida a la Auto Body Corporation, la industria de referencia consiste en fabricar, producir, comprar, vender, almacenar, montar, reparar y modificar carrocerías de todas clases, cajas, *chassis*, plataformas y capotas para toda clase de vehículos de motor, así como partes y accesorios de los mismos, y de ello se llega a la conclusión de que los artículos terminados de estas industrias son vehículos de motor, de cualquier clase que se produzcan, bien sean guaguas, camiones, guaguas de entregas, ambulancias o cualquiera otra clase de vehículos de motor, y de acuerdo con la sección 2 de la mencionada Ley núm. 40 de 25 de abril de 1930, "dichas industrias nuevas,

sus edificios, maquinarias, materiales, franquicias, etc., y en general, todos los bienes, derechos y privilegios pertenecientes a dichas industrias, que sean necesarios para su trabajo y funcionamiento, estarán exentos de toda clase de contribuciones...."

El documento también contiene extractos de Cooley on Taxation, una carta de un tesorero interino fechada diciembre 4, 1931, dirigida al abogado de A. Alvarez Hnos. y Pedro A. Pizá, y otros detalles interesantes que omitimos en aras de la brevedad. El párrafo final dispone lo siguiente:

"POR TANTO, esta Comisión de Servicio Público de Puerto Rico resuelve confirmar, y por la presente confirma, su resolución de 15 de enero de 1934, prorrogando las exenciones de los peticionarios arriba indicados por el mismo período de tiempo que le falta a la concesionaria original, Auto Body Corporation, o sea hasta el día 14 de enero de 1939, revocando, como revocamos, aquella parte de la resolución que excluía de la exención los *chassis* de los *trucks* o camiones producidos por ellos, estando, como están, exentos del pago de toda clase de contribuciones en las industrias nuevas de los peticionarios, sus edificios, maquinarias, materiales, franquicias, etc. y en general todos los bienes, derechos y privilegios pertenecientes a dichas industrias, que sean necesarios para su trabajo y funcionamiento, tales como los *chassis*, herrajes y demás materiales que utilicen en la fabricación, producción, montura, reparación y modificación de las guaguas o autobuses, camiones o *trucks,* guaguas de entrega o '*deliveries*', y demás vehículos de motor, productos de las industrias mencionadas en el epígrafe."

Si las disposiciones contenidas en el documento anterior pueden ser consideradas como evidencia de los hechos allí expuestos, parece enteramente claro que las órdenes o resoluciones anteriores de la Comisión indicaban un propósito de eximir de contribuciones a las industrias que se dedicaran a la fabricación de *chassis*. Del testimonio del socio gestor de la demandante también aparece claramente que la demandante no se dedicaba a la fabricación de *chassis*. Un *chassis,* que es de por sí un producto terminado, no se transforma en algo nuevo o distinto por el mero hecho de haber sido acortado—en ausencia de alguna explicación sobre la manera

o método de efectuar tal acortamiento—ni por el proceso de remachar a sus costados vigas de hierro que se extiendan más allá de su parte trasera para sostener así la parte trasera de la guagua o de la carrocería del camión, el cual es más largo que el *chassis,* ni por el proceso de colocar travesaños (*crossbars*) para sostener los costados de una caja que es más ancha que el *chassis;* ni por el proceso de reforzar las sopandas y cambiar las gomas o aros. Por supuesto, el resultado es el mismo aun si el alargamiento se efectúa mediante el uso de dos vigas de hierro unidas a los costados del marco (*frame*) o por el uso de una viga en forma de ''Y''. De todas maneras, el producto acabado de una industria exentuada no está exento. Véase *Sancho Bonet* v. *Corona Brewing Corporation,* 89 F. (2d) 479.

Sea cual fuere la intención de la Comisión de Servicio Público, nada hay que demuestre que en cualquiera de sus órdenes o resoluciones dictadas antes de marzo 14 de 1934 se hubiese declarado como exenta de contribución cualquier industria dedicada a la fabricación de guaguas, camiones, u otros vehículos de motor. Las disposiciones contenidas en la orden de marzo 4, 1934, hasta donde llegan, nos llevan persuasivamente a una conclusión contraria. No es necesario que decidamos ahora si la resolución de marzo 14 era, como dice la apelada, *res judicata* y obligatoria para el apelante, y no sujeta a ataque colateral, o si era, como alega el apelante, por lo menos en ciertos respectos, una nulidad absoluta.

Los tres *chassis* descritos en la demanda estaban, prima facie, sujetos a la contribución impuesta por la subdivisión 8 del artículo 16 de la Ley de Rentas Internas, tal como fué enmendado en 1931 (Leyes de ese año, pág. 505). Es, por lo menos, una cuestión debatible si dichos *chassis* fueron eximidos por la llamada orden *nunc pro tunc* de marzo 14, 1934. Si el Tesorero creía y tenía razones para creer que las contribuciones podían y debían ser cobradas, era su deber tratar de cobrarlas. No estamos preparados para decir que él no tenía discreción con respecto a tales cues-

tiones. No puede decirse en este caso, como se dijo en *Durlach Bros. Inc.* v. *Domenech,* 47 D.P.R. 654, que él no estaba actuando en su capacidad oficial o que estaba actuando sin suficiente color de autoridad. De ordinario, como se dijo en dicho caso, las contribuciones deben ser pagadas bajo protesta. En *Camuñas* v. *New York & Porto Rico Steamship Co.,* 260 F. 40, 50, la Corte de Circuito de Apelaciones para el Primer Circuito dijo:

"No es necesaria una discusión o cita de autoridades para demostrar que solamente en un caso muy claro está autorizada una corte de equidad a expedir un *injunction* que tienda a mutilar al gobierno en el cobro de contribuciones necesarias para su subsistencia y para el cumplimiento de sus deberes públicos esenciales."

Una lectura de la opinión en el caso de *The Texas Co.* v. *Domenech,* 50 D.P.R. 432, sería suficiente para distinguirlo.

El artículo 4 de nuestro estatuto local sobre *injunctions,* tal como fué enmendado en 1927 (Leyes de ese año, pág. 167) prohibe el libramiento de un *injunction* "para impedir la imposición o cobro de cualquier contribución establecida por las leyes de los Estados Unidos o de Puerto Rico." La interpretación y aplicación de tales estatutos se discute en una anotación al caso de *Huston* v. *Iowa Soap Co.,* 108 A.L.R. 173, 184.

De una anotación al caso de *North American Old Roman Catholic Diocese* v. *Havens,* 84 A.L.R. 1313, 1319, tomamos los siguientes extractos:

"Se ha resuelto por una gran mayoría de las cortes que han discutido el punto, que la mera ilegalidad de una contribución, por haberse impuesto sobre propiedad exenta de contribuciones, no justifica la expedición de un *injunction* contra el cobro o imposición de la contribución, en ausencia de algún otro elemento, tal como la falta de un remedio legal adecuado, daños irreparables, *cloud on title* o multiplicidad de acciones, que presenten un caso para el ejercicio de la jurisdicción de equidad." (Pág. 1319.)

"Para que se pueda conferir a una corte federal jurisdicción equitativa para impedir el cobro de una contribución estadual sobre derechos de patentes que estén exentos de contribución estadual, por

el fundamento de que no existe un remedio legal adecuado y de que el querellante sufriría daños irreparables, se ha resuelto que no es suficiente exponer meramente la conclusión de que el cobro de la contribución resultaría en daños irreparables y que el querellante no tiene un remedio adecuado en derecho; debe existir alguna alegación de hechos específicos de los cuales la corte pueda inferir que los daños irreparables serían un resultado natural y probable. *Indiana Mfg. Co.* v. *Koehne* (1903) 188 U. S. 681, 47 L. ed. 651, 23 S. Ct. 452.'' (Pág. 1321.)

''Hay muy pocas autoridades que establezcan directamente la proposición de que la equidad impedirá el cobro de una contribución sencillamente porque se imponga sobre bienes que estén exentos de contribuciones por la ley, sin que se establezca cualquiera de los fundamentos usuales para el ejercicio de la jurisdicción de equidad, tales como *a cloud on title,* multiplicidad de acciones o daños irreparables.

''Los casos que resuelven meramente que el *injunction* es el remedio apropiado para poner en efecto una exención de contribuciones (subdivision 2, supra) constituyen una autoridad muy débil para sostener el principio de que la exención no es, sin ninguno de los otros elementos de la jurisdicción de equidad, suficiente para darle el derecho a un *injunction* a aquéllos que disfrutan de la exención, aunque los casos reportados no demuestran la existencia de ninguno de estos últimos elementos en cada caso particular, donde las cortes no discuten este punto específico y los casos reportados no niegan positivamente la existencia de uno o más de estos elementos. Esta observación es aplicable aun si las cortes citaran en apoyo de su resolución que procede un *injunction* en contra de una contribución sobre bienes exentos, la declaración de High en su tratado sobre *Injunctions,* al efecto de que 'la tentativa de cobrar una contribución sobre bienes que hayan sido exentos por una autoridad legislativa apropiada de la carga de una contribución, constituye un daño de naturaleza tan irreparable, que merece un remedio preventivo.' '' (Págs. 1321–1322.)

''Se ha resuelto definitivamente que en aquellos casos donde existe algún elemento en adición a la ilegalidad de la contribución que coloque el caso dentro de algún fundamento establecido de la jurisdicción de equidad, tales como 'a cloud on title', multiplicidad de acciones o daños irreparables, y no existe un remedio legal adecuado, la equidad concederá un *injunction* en contra de una contribución sobre bienes que hayan sido exentos de tal contribución.'' (Pág. 1322.)

La sección 3 de la "Ley disponiendo el pago de contribuciones bajo protesta; estableciendo un procedimiento para autorizar el cobro y devolución de las mismas. . . . y para otros fines," aprobada el 19 de abril de 1927 (Leyes de ese año, págs. 123, 125) dispone en parte lo siguiente:

"El contribuyente que haya pagado el todo o parte de cualquier contribución bajo protesta, podrá, dentro del plazo de un año, a partir de la fecha del pago, demandar al Tesorero de Puerto Rico en una corte insular de jurisdicción competente, o en la corte de distrito de los Estados Unidos para Puerto Rico, para obtener la devolución de la cantidad protestada. . . Una vez listo cualquier caso para juicio, el tribunal señalará día para la vista, a petición de cualquiera de las partes, con preferencia a cualquier otro asunto pendiente ante el mismo. Una vez que se dicte sentencia final, si ésta fuese favorable al contribuyente, el Tesorero de Puerto Rico procederá a reintegrar la suma que se ordene en la sentencia con cargo a cualquier fondo existente en Tesorería no destinado a otras atenciones, más los intereses sobre tal cantidad a razón del seis (6) por ciento anual, computados desde la fecha de la radicación de la demanda ante la corte; o a instancia del contribuyente, deberá el Tesorero acreditar al contribuyente el montante total de la cantidad a reintegrar, para ser aplicada al pago de cualquier contribución ya vencida y no satisfecha, o por vencerse en el futuro; *Disponiéndose,* que dicho crédito podrá ser transferido por el contribuyente y entonces el Tesorero de Puerto Rico acreditará el mismo a los cesionarios a todos los efectos de la ley. Las costas, desembolsos y honorarios de abogado se impondrán a discreción de la corte en la misma forma que en las demás acciones civiles."

Si la demandante hubiera pagado bajo protesta los $872.52 originalmente exigídosle y hubiera instado demanda para recobrar dicha suma con intereses, ella hubiera podido obtener una decisión final sobre la cuestión de la supuesta exención, dentro del mismo período de tiempo, o quizá dentro de un período menor que el transcurrido para obtener una decisión final sobre la cuestión relativa a su derecho a un *injunction* preliminar. No podemos asumir con la apelada que el Tesorero no hubiera esperado el resultado de tal

litigio antes de tratar de recobrar las contribuciones sobre los 250 ó 260 "chassis" mencionados por el administrador general de la demandante en su declaración.

El cobro de los $872.52, más recargos y costas, no pudo haber causado daños irreparables. No se había hecho ninguna amenaza de un requerimiento ulterior. Si el cobro obligado de la suma mayor envuelta en un requerimiento ulterior causará daños irreparables, es cuestión que surgirá cuando el Tesorero dé el primer paso en un procedimiento iniciado para tal cobro.

No hubo una alegación suficiente de daños irreparables. Durante la vista no se demostró satisfactoriamente que hubiera habido tales daños. La demandante tenía un remedio adecuado en derecho.

*La resolución apelada debe ser revocada.*

El Juez Asociado Señor De Jesús no intervino.